T.C. Memo. 2010-34

UNITED STATES TAX COURT

DANIKA K. KOSOLA, Petitioner
AND JASON A. KOSOLA, Intervenor <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16020-06.                    Filed February 23, 2010.

<u>Jan R. Pierce</u>, for petitioner.

Jason A. Kosola, pro se.

<u>Nhi T. Luu</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  This case arises from petitioner's request
for relief from joint and several liability under section

6015(f)[1] with respect to liabilities reported on petitioner's 2000 and 2001 joint Federal income tax returns. Respondent determined petitioner was not entitled to relief. Petitioner timely petitioned the Court seeking review of respondent's determination. The sole issue for decision is whether petitioner is entitled to relief under section 6015(f).

## FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts is incorporated herein by this reference. Many of the remaining facts are drawn from petitioner's testimony at trial, which we found to be credible.[2] Petitioner resided in Oregon when her petition was filed.

Background

Petitioner and intervenor met in 1997 in Park City, Utah, and began living together shortly thereafter. Their relationship was troubled from the beginning, and in January 1999 petitioner briefly moved out of the home they shared. During this

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]In his reply brief, respondent calls our attention to several alleged inconsistencies in petitioner's statements with respect to whether joint Federal income tax returns were filed for petitioner and intervenor for 2000 and 2001, whether petitioner saw the returns before they were filed or knew of the underpayments reported on the returns, and whether petitioner and intervenor had a joint checking account during the years at issue. We do not find convincing respondent's allegation that petitioner made inconsistent statements.

separation, intervenor broke into the apartment petitioner was renting, tore petitioner's clothing, vandalized her schoolwork, CDs, and other possessions, and urinated on her bed. Around the same time, intervenor was arrested for assaulting petitioner after an incident in which he hit petitioner, put her in a headlock, and refused to let her out of his truck.

Despite these incidents the couple reconciled, and in February or March 1999 petitioner discovered she was pregnant with intervenor's child. The child was born in November 1999, and the couple married on August 27, 2000.

At the beginning of the marriage, intervenor owned a painting business. Intervenor maintained a separate checking account for the business in 2000 and 2001. Petitioner did not participate in intervenor's business and had no access to the separate checking account or to intervenor's business records. In 2001 petitioner and intervenor moved from Utah to Oregon, and intervenor began working for Hansen Architectural Systems. Petitioner had a high school education during the relevant period and rarely worked outside the home. In 2000 petitioner earned no income; in 2001 petitioner earned wages of $1,297 and nonemployee compensation of $1,290.

Petitioner and intervenor opened a joint bank account around the time they moved to Oregon in 2001. The account statements were mailed to the couple's home; petitioner had access to the

statements and sometimes reviewed them.  Intervenor continued to maintain a separate business account throughout the marriage, and he paid the couple's bills and managed the couple's finances. The couple lived a modest lifestyle in 2000 and 2001 and did not take expensive vacations, buy expensive jewelry, or purchase other luxuries.

Petitioner occasionally asked intervenor whether he was paying his taxes, and intervenor assured her he was.  In fact, intervenor did not file timely Federal income tax returns for 2000 or 2001.  On or about April 3, 2003, intervenor untimely filed joint Federal income tax returns for 2000 and 2001.  The returns showed balances due of $14,660[3] and $1,726 for 2000 and 2001, respectively.  Intervenor did not pay the taxes shown as due on the returns.  On April 28, 2003, the Internal Revenue Service (IRS) assessed the amounts shown on the returns.

Petitioner did not review or sign the joint returns; intervenor simply signed petitioner's name without discussing the returns with her.  The parties agree, however, that the returns were valid joint Federal income tax returns.

Intervenor continued to abuse petitioner physically and emotionally throughout their marriage.  On one occasion, intervenor shoved petitioner while she was holding their son.  On

_____

[3]Of the $14,660 of tax reported as due on the 2000 return, $9,246, or 63 percent, was self-employment tax attributable to intervenor's business income.

another occasion petitioner was holding her keys and intervenor squeezed her hand so hard that she fell to the ground and the keys cut her hand.[4] Petitioner sought and was granted a restraining order after the latter incident. Petitioner and intervenor separated in 2004 and were divorced on March 31, 2005.

As of the trial date, petitioner was living with her father in Chula Vista, California. Petitioner's only source of income as of the date of trial was unemployment benefits, her only asset of significant value was a car for which she was making monthly loan payments, and she testified that she had monthly expenses of $1,525, not including rent, food, clothing, and personal care items.[5]

In the summer of 2003 petitioner learned for the first time that intervenor had not timely filed joint returns for the couple for 2000 and 2001 and that there was a balance due with respect to each year. On or about July 13, 2005, petitioner signed a Form 8857, Request for Innocent Spouse Relief, for 2000 and 2001. The IRS received the Form 8857 on July 21, 2005. The tax liabilities from which petitioner sought relief under section

---

[4]Intervenor, who testified at trial, does not deny that he abused petitioner. He suggested, however, that petitioner was abusive toward him as well and that all of the incidents were "two-way incidents".

[5]Petitioner testified that she had the following monthly expenses: Automobile payment, $350; automobile insurance, $105; credit card payments, $350; child support payment, $491; cellular phone payment, $79; and student loan payment, $150.

6015 were underpayments of taxes reported on the couple's 2000 and 2001 joint Federal income tax returns. Petitioner also completed a Form 12510, Questionnaire for Requesting Spouse, on or about August 30, 2005. On the Form 12510, petitioner stated that she had "all access" to the couple's joint checking account and sometimes reviewed monthly bank statements but did not balance the checkbook. Petitioner also reported that she earned $2,400 and spent $2,360 per month.

On November 17, 2005, the IRS issued a preliminary determination denying petitioner's request for relief under section 6015. On December 4, 2005, petitioner completed and signed a Form 12509, Statement of Disagreement, in which she formally disagreed with the IRS' preliminary determination. Because petitioner disagreed with the IRS' preliminary determination, petitioner's request for section 6015(f) relief was forwarded to the IRS' Office of Appeals for consideration. On February 1, 2006, petitioner's request for relief was assigned to Appeals Officer Roland Banks (Mr. Banks). Over the next few months, Mr. Banks reviewed petitioner's request and spoke to petitioner and intervenor.

On or about June 15, 2006, petitioner received an undated Notice of Determination Concerning Your Request for Relief Under the Equitable Relief Provision of Section 6015(f) (notice of determination). The notice of determination stated that the

Office of Appeals had denied petitioner's request for relief under section 6015(f) for 2000 and 2001. According to the notice of determination, the tax liabilities for which petitioner remained liable, including penalties and accrued interest through May 18, 2006, were $26,375.14 and $2,272.70 for 2000 and 2001, respectively.

The notice of determination was accompanied by an Appeals case memorandum (memorandum), which included a check-the-box analysis of petitioner's request for section 6015(f) relief and a brief narrative. In the check-the-box portion of the memorandum, the Office of Appeals concluded that petitioner failed to establish that it was reasonable for her to believe that intervenor would pay the reported liability. The Office of Appeals made no determination with respect to whether petitioner would face economic hardship if respondent denied her request for relief. In the narrative portion of the memorandum, the Office of Appeals concluded: "The testimony given by the * * * [intervenor] was credible and gave a more accurate account of the events leading up to underpayment [sic] than that offered by * * * [petitioner]."[6]

---

[6]The analysis contained in the notice of determination and memorandum was superficial, summary, and incomplete. The memorandum concluded, for example, that petitioner knew the taxes for 2000 and 2001 would not be paid when she signed the returns in 2003; in fact, petitioner never signed the 2000 or 2001 joint Federal income tax returns. Moreover, the memorandum concluded
(continued...)

The IRS applied the following credits to petitioner and intervenor's joint Federal income tax liabilities (including penalties and interest):  (1) An overpayment credit of $530.43 from intervenor's 2004 taxable year, which was applied on April 15, 2005; (2) an overpayment credit of $1,187.15 and accrued interest of $5.85 from intervenor's 2006 taxable year, which were applied on April 15, 2007; and (3) an overpayment credit of $1,337.79 and accrued interest of $559.37 from intervenor's 2007 taxable year, which were applied on April 15, 2008.  As a result the 2001 Federal income tax liability has been satisfied.  The 2000 joint Federal income tax liability remains unpaid.

OPINION

I.   Section 6015(f)

In general, married taxpayers who file a joint Federal income tax return are jointly and severally liable for the tax reported or reportable on the return.  Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. 276, 282 (2000).  Under section 6015, however, a spouse may obtain relief from joint and several liability in certain circumstances.  Section 6015(a)(1) provides

---

[6](...continued)
that petitioner had not established she would face economic hardship if her request for relief were denied, but there is no indication that the Office of Appeals conducted a meaningful analysis of petitioner's financial situation.  Finally, some of the analysis contained in the memorandum apparently came from another taxpayer's case and was simply cut from the other taxpayer's document and pasted into the memorandum without changing the other taxpayer's name.

that a spouse who has made a joint return may seek relief from joint and several liability under section 6015(b) (dealing with relief from liability for an understatement of tax on a joint return). Section 6015(a)(2) provides that an eligible spouse may elect to limit his or her liability for a deficiency with respect to a joint return under section 6015(c) (dealing with relief from joint and several liability for taxpayers who are no longer married or who are legally separated or no longer living together). If relief is not available under section 6015(b) or (c), an individual may seek equitable relief under section 6015(f). Section 6015(f) provides:

> SEC. 6015(f). Equitable Relief.--Under procedures prescribed by the Secretary, if--
>
> > (1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and
> >
> > (2) relief is not available to such individual under subsection (b) or (c),
>
> the Secretary may relieve such individual of such liability.

Petitioner contends she is entitled to relief from joint and several liability under section 6015(f).

II. Jurisdiction

The Tax Court is a court of limited jurisdiction, and it may exercise its jurisdiction only to the extent authorized by Congress. See sec. 7442; Moore v. Commissioner, 114 T.C. 171,

175 (2000); Naftel v. Commissioner, 85 T.C. 527, 529 (1985). Our jurisdiction to review petitioner's request for equitable relief is conferred by section 6015(e), which allows a spouse who has sought relief under section 6015(b), (c), or (f) to contest the Commissioner's denial of relief by timely filing a petition in the Tax Court. Before December 20, 2006, section 6015(e)(1) provided that we had jurisdiction to review the Commissioner's denial of relief under section 6015 "In the case of an individual against whom a deficiency has been asserted and who elects to have subsection (b) or (c) apply". Thus, in Billings v. Commissioner, 127 T.C. 7, 16-17 (2006), we held that former section 6015(e)(1) did not provide us with jurisdiction to review a nondeficiency, stand-alone petition. Soon after our decision in Billings, Congress amended section 6015(e)(1) to provide that this Court has jurisdiction over nondeficiency, stand-alone petitions and added to that section the words "or in the case of an individual who requests equitable relief under subsection (f)". See Tax Relief and Health Care Act of 2006, Pub. L. 109-432, div. C, sec. 408(a), 120 Stat. 3061; Kollar v. Commissioner, 131 T.C. __, __ (2008) (slip. op. at 5-6). The amendment applies to tax liabilities arising or remaining unpaid on or after December 20, 2006. Kollar v. Commissioner, supra at __ (slip. op. at 6). Some part of petitioner's tax liability for each of the years 2000 and 2001 remained unpaid on December 20, 2006.

Accordingly, we have jurisdiction to review petitioner's request for equitable relief.

III. <u>The Standard and Scope of Review</u>

In cases brought under section 6015(f) we apply a de novo standard of review as well as a de novo scope of review. <u>Porter v. Commissioner</u>, 132 T.C. __, __ (2009) (slip. op. at 12).[7] Petitioner bears the burden of proving that she is entitled to relief under section 6015(f). See <u>id.</u>; see also Rule 142(a).

IV. <u>Rev. Proc. 2003-61</u>

The Commissioner evaluates requests for section 6015(f) relief filed on or after November 1, 2003, using procedures set forth in Rev. Proc. 2003-61, 2003-2 C.B. 296. <u>Porter v. Commissioner</u>, <u>supra</u> at __ (slip. op. at 12) (citing <u>Banderas v. Commissioner</u>, T.C. Memo. 2007-129). Rev. Proc. 2003-61, <u>supra</u>, supersedes Rev. Proc. 2000-15, 2000-1 C.B. 447, and is effective for petitioner's request for relief, which was filed after November 1, 2003. Rev. Proc. 2003-61, secs. 6 and 7, 2003-2 C.B. at 299.

---

[7]Respondent disagrees with our recent holding in <u>Porter v. Commissioner</u>, 132 T.C. __, __ (2009) (slip. op. at 12). Respondent argues that the appropriate standard of review in sec. 6015(f) cases is abuse of discretion and the scope of review should be limited to the administrative record. We decline to revisit our holding in <u>Porter v. Commissioner</u>, <u>supra</u>, at this time. We note, however, that respondent's determination was so superficial and incomplete, see <u>supra</u> note 6, that we might well have concluded that respondent abused his discretion if the appropriate standard of review were abuse of discretion as respondent contends.

A.    Section 4.01:  The Threshold Requirements

Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297-298, sets forth seven threshold conditions a requesting spouse must satisfy to be eligible to submit a request for relief under section 6015(f):  (1) The taxpayer filed joint Federal income tax returns for the taxable year or years for which relief is sought; (2) the taxpayer does not qualify for relief under section 6015(b) or (c); (3) the taxpayer applies for relief no later than 2 years after the date of the Commissioner's first collection activity after July 22, 1998, with respect to the taxpayer;[8] (4) no assets were transferred between the spouses filing the joint returns as part of a fraudulent scheme by such spouses; (5) there were no disqualified assets transferred to the taxpayer by the nonrequesting spouse; (6) the taxpayer did not file the returns with fraudulent intent; and (7) the liability from which relief is sought is attributable to an item of the nonrequesting spouse. Respondent concedes, and we agree, that petitioner satisfies all of the threshold conditions.

B.    Section 4.02:  The Safe Harbor Requirements

If a requesting spouse fulfills the threshold requirements of Rev. Proc. 2003-61, sec. 4.01, the Commissioner ordinarily will grant relief from joint and several liability with respect

[8]This Court has invalidated the 2-year limitation.  Lantz v. Commissioner, 132 T.C. ___ (2009), on appeal (7th Cir., Sept. 21, 2009); see Olson v. Commissioner, T.C. Memo. 2009-294 n.10.

to underpayments on a joint Federal income tax return, provided all of the following additional requirements are satisfied:  (1) On the date of the request for relief, the requesting spouse is no longer married to, or is legally separated from, the nonrequesting spouse; (2) on the date the requesting spouse signed the joint return, the requesting spouse did not know, and had no reason to know, that the nonrequesting spouse would not pay the tax liability; and (3) the requesting spouse will suffer economic hardship if the Commissioner does not grant relief. Rev. Proc. 2003-61, sec. 4.02, 2003-2 C.B. at 298.

Respondent concedes that petitioner was divorced from intervenor on the date she requested relief under section 6015(f).  However, respondent contends that petitioner has not established that she had no knowledge or reason to know, on the date the 2000 and 2001 joint Federal income tax returns were signed, that the underpayments reported on those returns would not be paid or that she would face economic hardship if her request for relief were denied.  Accordingly, respondent argues that petitioner has not satisfied the Rev. Proc. 2003-61, sec. 4.02, safe harbor requirements.  We disagree.

1.    Knowledge or Reason To Know

Respondent observes that this case boils down to a question of witness credibility and that we are under no obligation to accept self-serving, uncorroborated testimony.  See Ishizaki v.

Commissioner, T.C. Memo. 2001-318 (citing Tokarski v.
Commissioner, 87 T.C. 74, 77 (1986)).  Respondent contends that
petitioner's trial testimony was inconsistent with statements she
made earlier on Forms 8857 and 12510 and that petitioner has
therefore failed to establish that she did not know, and had no
reason to know, that the underpayments reported on her 2000 and
2001 joint Federal income tax returns would not be paid.  We find
respondent's argument unpersuasive.  Indeed, the statements
respondent highlighted as examples of petitioner's supposedly
inconsistent testimony are, in fact, consistent.

On the basis of the record before us, we conclude that
petitioner did not know, and had no reason to know, that the
underpayments reported on her 2000 and 2001 joint Federal income
tax returns would not be paid.  Petitioner asked intervenor
whether he had paid the couple's taxes, and he assured her
everything was fine.  Petitioner neither signed nor reviewed the
2000 and 2001 joint Federal income tax returns; intervenor signed
petitioner's name and submitted the returns without her
knowledge.[9]

Even if petitioner had reviewed the returns, she would not
have known or had reason to know that the liabilities reported on
the returns would not be paid.  Although petitioner had access to

---

[9]In reaching this conclusion, we specifically find that
intervenor's testimony on these disputed factual issues is not
credible.

the couple's joint checking account and bank statements, petitioner had, at best, an incomplete picture of her and intervenor's financial situation. Intervenor was responsible for paying bills, balancing the couple's checkbook, and managing the couple's finances. Moreover, petitioner was not involved in intervenor's business and had no access to intervenor's business checking account. Thus, even if petitioner had reviewed the 2000 and 2001 joint Federal income tax returns and seen that there was a balance due, she would not have known, or had reason to know, that intervenor would not pay the tax liabilities. Finally, the couple lived a modest lifestyle during the time at issue and did not make any lavish purchases that should have caused petitioner to suspect intervenor had not paid the couple's tax liabilities.

### 2. Economic Hardship

In determining whether a requesting spouse will suffer economic hardship if the Commissioner denies his or her request for section 6015(f) relief, Rev. Proc. 2003-61, sec. 4.02, directs the Commissioner to base his decision on rules similar to those found in section 301.6343-1(b)(4), Proced. & Admin. Regs., which provides that an economic hardship exists if an individual is unable to pay reasonable basic living expenses. In determining a reasonable amount for basic living expenses, the Commissioner shall consider information provided by the taxpayer, including: (1) The taxpayer's age, employment status and

history, ability to earn, number of dependents, and status as a dependent of someone else; (2) the amount reasonably necessary for food, clothing, housing, utilities, medical expenses, transportation, child support, and other necessities; (3) the cost of living in the geographical area in which the taxpayer lives; (4) the amount of property available to pay the taxpayer's expenses; (5) any extraordinary expenses, including educational expenses; and (6) any other factor that the taxpayer claims bears on economic hardship and brings to the Commissioner's attention. Sec. 301.6343-1(b)(4)(ii), Proced. & Admin. Regs.

Respondent argues that petitioner has failed to establish she would suffer economic hardship if her request for relief were denied because she failed to substantiate her income and expenses. Although we are not required to accept petitioner's uncorroborated testimony, see Ishizaki v. Commissioner, supra, neither are we required to reject petitioner's testimony if we find it credible, see, e.g., Washington v. Commissioner, 120 T.C. 137, 150 (2003).

Petitioner testified that she was unemployed and had never earned more than $14 per hour even when she was employed. She further testified that her only source of income as of the date of trial was unemployment benefits and her only asset of significant value was a car for which she was making monthly loan payments. Moreover, petitioner testified that she had expenses

of $1,525 per month, not including food, clothing, housekeeping supplies, personal care, and other necessities. Finally, petitioner testified that she was not paying rent to her father as of the trial date but that she hoped to begin paying rent as soon as she could find a job and that she moved in with her father only because she could not survive financially in Oregon. Although much of petitioner's testimony, including her monthly expenses, was unsubstantiated, we find her testimony to be honest, forthright, and credible. Thus, we conclude on the basis of petitioner's testimony that petitioner would face economic hardship if her request for relief under section 6015(f) were denied.

In summary, we conclude petitioner has satisfied the Rev. Proc. 2003-61, sec. 4.02, safe harbor requirements and is therefore entitled to equitable relief under section 6015(f).

C.  Section 4.03:  Factors for Determining Whether To Grant Equitable Relief

Although we conclude that petitioner qualifies under the safe harbor of Rev. Proc. 2003-61, sec. 4.02, because respondent based his determination on the factors enumerated in Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B. at 298-299, we shall also review whether petitioner qualifies for equitable relief under Rev. Proc. 2003-61, sec. 4.03.

If a requesting spouse satisfies the threshold requirements of Rev. Proc. 2003-61, sec. 4.01, but fails to satisfy one or

more of the safe harbor requirements of Rev. Proc. 2003-61, sec. 4.02, the Commissioner may still grant relief under section 6015(f) on the basis of a variety of factors.  Rev. Proc. 2003-61, sec. 4.03(1).  The following list is not exclusive, and no single factor is determinative:

(a) Factors that may be relevant to whether the Service will grant equitable relief include, but are not limited to, the following:

(i) Marital status.  Whether the requesting spouse is separated (whether legally separated or living apart) or divorced from the nonrequesting spouse. * * *

(ii) Economic hardship.  Whether the requesting spouse would suffer economic hardship (within the meaning of section 4.02(1)(c) of this revenue procedure) if the Service does not grant relief from the income tax liability.

(iii) Knowledge or reason to know.

(A) Underpayment cases.  In the case of an income tax liability that was properly reported but not paid, whether the requesting spouse did not know and had no reason to know that the nonrequesting spouse would not pay the income tax liability.

*    *    *    *    *    *    *

(C) Reason to know.  For purposes of (A) and (B) above, in determining whether the requesting spouse had reason to know, the Service will consider the requesting spouse's level of education, any deceit or evasiveness of the nonrequesting spouse, the requesting spouse's degree of involvement in the activity generating the income tax liability, the requesting spouse's involvement in business and household financial matters, the requesting spouse's business or financial expertise, and any lavish or unusual expenditures compared with past spending levels.

(iv) Nonrequesting spouse's legal obligation. Whether the nonrequesting spouse has a legal obligation

to pay the outstanding income tax liability pursuant to a divorce decree or agreement. This factor will not weigh in favor of relief if the requesting spouse knew or had reason to know, when entering into the divorce decree or agreement, that the nonrequesting spouse would not pay the income tax liability.

(v) <u>Significant benefit</u>. Whether the requesting spouse received significant benefit (beyond normal support) from the unpaid income tax liability or item giving rise to the deficiency. See Treas. Reg. § 1.6015-2(d).

(vi) <u>Compliance with income tax laws</u>. Whether the requesting spouse has made a good faith effort to comply with income tax laws in the taxable years following the taxable year or years to which the request for relief relates.

Rev. Proc. 2003-61, sec. 4.03(2)(a).

(b) Factors that, if present in a case, will weigh in favor of equitable relief, but will not weigh against equitable relief if not present in a case, include, but are not limited to, the following:

(i) <u>Abuse</u>. Whether the nonrequesting spouse abused the requesting spouse. The presence of abuse is a factor favoring relief. A history of abuse by the nonrequesting spouse may mitigate a requesting spouse's knowledge or reason to know.

(ii) <u>Mental or physical health</u>. Whether the requesting spouse was in poor mental or physical health on the date the requesting spouse signed the return or at the time the requesting spouse requested relief. The Service will consider the nature, extent, and duration of illness when weighing this factor.

Rev. Proc. 2003-61, sec. 4.03(2)(b).

We now consider each of the factors discussed above.

1. <u>Marital Status</u>

Respondent concedes that petitioner was divorced when she filed her request for relief. This factor favors petitioner.

### 2. Economic Hardship

For the reasons discussed above, see <u>supra</u> pp. 16-18, we believe petitioner would face economic hardship if her request for relief under section 6015(f) were denied.  This factor favors petitioner.

### 3. Knowledge or Reason To Know

Rev. Proc. 2003-61, sec. 4.03, lists six factors to be considered when determining whether a requesting spouse had knowledge or reason to know that a deficiency or underpayment reported on a joint Federal income tax return would not be paid: (1) The requesting spouse's level of education; (2) any deceit or evasiveness of the nonrequesting spouse; (3) the requesting spouse's degree of involvement in the activity generating the income tax liability; (4) the requesting spouse's involvement in business and household financial matters; (5) the requesting spouse's business or financial expertise; and (6) any expenditures that are lavish or unusual compared with past spending levels.  All six factors favor petitioner.  Petitioner has a high school education.[10]  Intervenor was deceitful to petitioner; when she inquired whether he was paying the couple's taxes, he assured her everything was fine.  Petitioner had no involvement in intervenor's business, and she did not have access

---

[10]Although petitioner has taken some college courses, none of the courses was in accounting, business, or finance.

to his business records or his business checking account. Petitioner, who had no business or financial expertise, was only minimally involved in household financial matters, and intervenor handled the couple's finances. Finally, the couple did not make any lavish or unusual purchases during the relevant period. As a result, we conclude this factor favors petitioner.

### 4. Nonrequesting Spouse's Legal Obligation

Petitioner and intervenor's divorce decree provides for the distribution of various debts but does not list the tax liabilities as a debt of the marriage, nor does it assign responsibility for paying the tax liabilities. Under the circumstances, this factor is neutral.

### 5. Significant Benefit

There is no evidence that petitioner significantly benefited, beyond ordinary support, from the underpayment of tax. This factor favors petitioner.

### 6. Compliance With Federal Income Tax Laws

Petitioner has made a good-faith effort to comply with Federal income tax laws in the years following the years to which her request for relief relates. This factor favors petitioner.

### 7. Abuse

Petitioner contends, and intervenor does not deny, that intervenor abused petitioner physically and emotionally before, during, and after their marriage. This factor favors petitioner.

### 8. Mental or Physical Health

There is no suggestion in the record that petitioner was in poor mental or physical health on the date the returns were filed, at the time she requested relief, or at any other relevant time. This factor is neutral.

In summary, six of the eight factors favor granting relief and two are neutral. The factors as a whole overwhelmingly favor granting petitioner relief under section 6015(f). Accordingly, we conclude that petitioner is entitled to relief from joint and several liability under section 6015(f).

## V. Conclusion

On the basis of the foregoing, we conclude that petitioner satisfied the threshold conditions of Rev. Proc. 2003-61, sec. 4.01, and the safe harbor requirements of Rev. Proc. 2003-61, sec. 4.02, because she established: (1) She was divorced from intervenor when she filed her request for relief; (2) she did not know, and had no reason to know, that the tax liabilities reported on the 2000 and 2001 returns would not be paid; and (3) she would suffer economic hardship if her request for relief were not granted. Alternatively, even if we were to conclude that petitioner did not satisfy the requirements of the safe harbor, our analysis of the factors set forth in Rev. Proc. 2003-61, sec. 4.03, overwhelmingly favors granting petitioner's request for equitable relief under section 6015(f). We therefore hold that

petitioner is entitled to relief from joint and several liability under section 6015(f).

Although our holding encompasses the 2001 tax liability, paid in full after respondent issued his notice of determination, from overpayment credits of intervenor, we note that our holding will not result in a refund for petitioner. Petitioner did not claim a refund for 2001, nor did she prove that she is entitled to one.

We have considered the parties' remaining arguments for results contrary to those discussed herein, and to the extent not discussed above, we conclude those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered for petitioner</u>.