T.C. Memo. 2012-260

UNITED STATES TAX COURT

SHARON K. HUDGINS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21782-10.                    Filed September 10, 2012.

<u>Sherri K. Anderson</u>, for petitioner.

<u>William F. Castor</u> and <u>Dessa J. Baker-Inman</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  Petitioner seeks review of respondent's determination to

deny relief from joint and several liability for unpaid Federal income taxes for

**[\*2]** 2006 under section 6015(b), (c), and (f) and for 2007 under section 6015(f).[1]

Petitioner timely petitioned this Court. After concessions,[2] the sole issue for decision is whether petitioner is entitled to relief under section 6015(f) for 2007.

## FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts is incorporated herein by this reference. Petitioner resided in Oklahoma when she petitioned this Court.

Background

Petitioner and Mr. Rozell married in December 2005. Mr. Rozell died from a mixture of pills and alcohol on February 14, 2009.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code for the relevant periods, and all Rule references are to the Tax Court Rules of Practice and Procedure. Some monetary amounts have been rounded to the nearest dollar.

[2]After an audit in 2008 respondent issued to petitioner and Donald R. Rozell a notice of deficiency determining a deficiency of $4,280, plus interest, with respect to their joint income tax return for 2006. The liability was satisfied on April 15, 2009, when respondent collected the amount due by a refund offset of a $5,509 overpayment of petitioner and Mr. Rozell's joint income tax account for 2008. Of the overpayment, $4,909 was attributable to Mr. Rozell's income tax withholding, and $600 was attributable to a refundable recovery rebate credit. Accordingly, the parties now agree that petitioner's request for relief for 2006 is moot.

[*3]   During 2007 Mr. Rozell and three of his brothers each owned a 25% share of Hubs Vending Corp. (Hubs), an S corporation.  From 2007 through at least 2010 petitioner owned and operated two businesses:  (1) Hudgins Realty (real estate business), a sole proprietorship, and (2) Seahorse Publishing (publishing business), also a sole proprietorship.

At the time of Mr. Rozell's death, petitioner and/or Mr. Rozell owned the following real properties:  (1) their marital home at 1321 East Sixth Street, Cushing, Oklahoma (Sixth Street property); (2) a rental property at 417 North Linwood, Cushing, Oklahoma (Linwood property); (3) a rental property at 824 East Second Street, Cushing, Oklahoma (Second Street property); and (4) an undeveloped investment property in Lincoln County, Oklahoma (Lincoln County property).

Petitioner and Mr. Rozell timely filed a joint Form 1040, U.S. Individual Income Tax Return, for 2007 reporting the following income items:  (1) wages of $13,004 that Mr. Rozell received from Hubs; (2) Schedule C, Profit or Loss From Business, income of $22,534 from petitioner's real estate business; (3) Schedule C income of $3,221 from petitioner's publishing business; and (4) net passthrough income from Hubs of $163,714 on Schedule E, Supplemental Income and Loss.

**[\*4]** The joint return reported a total tax liability of $29,982, income tax withheld of $9,285, and tax due of $20,697.

Petitioner's Request for Relief

On or about July 8, 2009, petitioner submitted to respondent a Form 8857, Request for Innocent Spouse Relief (request for relief), seeking relief from joint and several liability for her and Mr. Rozell's outstanding 2007 income tax liability.

In a letter dated July 28, 2009, respondent's Cincinnati Centralized Innocent Spouse Operation (CCISO) notified Mr. Rozell's estate of petitioner's request for relief and requested that the estate complete a Form 12508, Questionnaire for Non-Requesting Spouse. Petitioner, through her representative, partially completed and returned the Form 12508 on behalf of Mr. Rozell's estate.

In considering petitioner's request for relief CCISO determined that (1) of the outstanding 2007 tax liability, $3,639 was attributable to petitioner and $17,058 was attributable to Mr. Rozell; (2) petitioner did not have a reasonable belief that Mr. Rozell would pay the tax because she did not review the return in the first instance and because the tax liabilities shown on Mr. Rozell's individual

[*5] returns from 2001 and 2002 were also not timely paid;[3] (3) petitioner was not making a good-faith effort to comply with the tax laws because she did not file her 2008 return, which had an extended due date of October 15, 2009, until October 20, 2009;[4] and (4) petitioner's minimum monthly payment was $215 because her monthly income and expenses were $2,485 and $2,270, respectively.

In a letter dated January 25, 2010, CCISO proposed to deny petitioner relief under section 6015. In a letter dated February 4, 2010, petitioner's attorney requested reconsideration of the proposed denial.

Appeals Office Proceedings

Respondent then transferred petitioner's request for relief to respondent's Appeals Office. On June 23, 2010, Appeals Officer William Jarvi held a conference with petitioner and her attorney. Subsequently, the Appeals Office determined that (1) petitioner would not suffer economic hardship if denied relief, (2) petitioner had reason to know the liability would not be paid, (3) Mr. Rozell

---

[3]Petitioner was not married to Mr. Rozell during 2001-02, and it is unclear why CCISO concluded that she had knowledge of Mr. Rozell's prior noncompliance. In deciding this case, we do not rely on CCISO's conclusion.

[4]Respondent concedes that petitioner timely filed her 2008 return.

[*6] did not have a legal obligation to pay the liability,[5] (4) petitioner appeared not to be in compliance with the tax laws, and (5) petitioner's marital status was the only factor favoring relief. Accordingly, the Appeals Office denied petitioner's request for relief.

The Probate Case

On March 27, 2009, Sherre Rozell-Brandenburg, Mr. Rozell's previous wife, filed a petition for letters of administration of Mr. Rozell's estate in the District Court of Payne County, Oklahoma. On June 2, 2009, petitioner filed a cross-petition for letters of administration, and on June 10, 2009, the court appointed her personal representative of the estate.

On October 16, 2009, petitioner filed an application for an order determining that Mr. Rozell's estate had an interest in the Betty Rozell Revocable Trust (Betty Rozell trust), requiring an account of the trust to be provided, and determining whether the estate should file an action in the District Court of Lincoln County, Oklahoma, to enforce or construe the terms of the trust. In her application, petitioner alleged that the estate had a one-seventh interest in the trust

---

[5]The Appeals officer seems to have misunderstood this factor, asking, according to the case record, whether petitioner agreed to pay Mr. Rozell's debts.

[*7] as a beneficiary and that Mr. Rozell had understood before his death that he would be receiving a distribution from the trust of approximately $60,000.

On August 25, 2010, petitioner filed an inventory of Mr. Rozell's estate in the probate case. In the inventory, petitioner listed as nonprobate assets of the estate three parcels of real property that she and Mr. Rozell had owned as joint tenants with the right of survivorship. The three parcels listed in the inventory were: (1) the Sixth Street property, (2) the Second Street property, and (3) the Lincoln County property. Petitioner listed as personal property of the estate (1) the estate's interest in Hubs, which was valued at approximately $90,000 and listed as having been transferred by the court to Ms. Rozell-Brandenburg to satisfy Ms. Rozell-Brandenburg's lien on the estate; (2) tools worth approximately $1,500, and (3) the estate's one-seventh interest in the Betty Rozell trust, the value of which was to be determined. Finally, petitioner listed $9,989 as money the estate received after Mr. Rozell's death.

The Trust Case

On March 31, 2010, petitioner filed a petition on behalf of Mr. Rozell's estate in the District Court of Lincoln County, Oklahoma, to enjoin the trustee of the Betty Rozell trust from distributing the estate's one-seventh share of the trust to other persons or entities. On December 16, 2010, the court entered judgment in

[*8] favor of the Betty Rozell trust, and on April 6, 2011, petitioner appealed the district court's judgment.[6]

Conveyances of the Rental Properties

By quitclaim deeds dated September 1, 2010, petitioner conveyed the Linwood property and the Second Street property to her sister, Brenda Sue Hudgins, and her brother, Jackie Lee Hudgins. The quitclaim deeds regarding the Linwood and Second Street properties bore no documentary tax stamps and stated that the conveyances were "family transfer[s]".

The Foreclosure Case

On March 31, 2011, a foreclosure suit was filed in the District Court of Payne County, Oklahoma, against petitioner and Mr. Rozell regarding the Sixth Street property. On August 16, 2011, the court entered judgment for the plaintiff and ordered that the Sixth Street property be sold at a sheriff's sale. On October 4, 2011, the Sixth Street property was offered for sale.

---

[6]As of the time of trial, the appeal was still pending in the Court of Civil Appeals of the State of Oklahoma. See OCIS Case Summary for No. DF-109331, Oklahoma State Courts Network, http://www.oscn.net/applications/oscn/getcase information.asp?submitted=true&number=109331&db=Appellate&viewtype= oscn (last visited July 24, 2012).

[*9] Petitioner's Business Income: 2006-10

Petitioner reported business income for tax years 2006-10 as follows:

| | Real estate business | | | Publishing business | | |
|---|---|---|---|---|---|---|
| Year | Gross receipts | Expenses | Net income | Gross receipts | Expenses | Net income |
| 2006 | $76,415 | $53,155 | $23,260 | -0- | -0- | -0- |
| 2007 | 47,990 | 25,456 | 22,534 | $25,115 | $21,894 | $3,221 |
| 2008 | 26,770 | 16,797 | 9,973 | 51,804 | 43,202 | 8,602 |
| 2009 | 14,570 | 17,970 | (3,400) | 42,773 | 35,280 | 7,493 |
| 2010 | 20,633 | 17,419 | 3,214 | 28,280 | 29,652 | (1,372) |

Petitioner's Rental Income: 2006-10

Petitioner reported rental income for tax years 2006-10 as follows:

| | Linwood property | | | Second Street property | | |
|---|---|---|---|---|---|---|
| Year | Gross receipts | Expenses | Net income | Gross receipts | Expenses | Net income |
| 2006 | $1,950 | $3,046 | ($1,096) | -0- | -0- | -0- |
| 2007 | 2,050 | 1,705 | 345 | -0- | -0- | -0- |
| 2008 | 2,475 | 2,376 | 99 | -0- | -0- | -0- |
| 2009 | 4,225 | 305 | 3,920 | $2,900 | $3,792 | ($892) |
| 2010 | 9,958 | 675 | 9,283 | -0- | 753 | (753) |

Petitioner's Form 433-A

On September 20, 2011, petitioner submitted to respondent a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals. On the Form 433-A petitioner reported that she was a beneficiary of the Betty Rozell Trust and that she anticipated receiving $50,000. Petitioner did

[*10] not list the Linwood, Second Street, or Lincoln County properties as real property she owned, and she did not disclose that she had transferred her interest in the Linwood or Second Street property for less than full value within the last 10 years.

Petitioner indicated on her Form 433-A that (1) she had ceased operating her publishing business; (2) she had $29 in total cash; (3) she had an IRA account worth $4,271; (4) she owned two vehicles:  a 2002 Lexus ES-300 with 238,800 miles on it and estimated equity of $7,500 and a 1991 Chrysler "TCM" with 60,000-80,000 miles on it and estimated equity of $4,500; and (5) from January 1 through September 14, 2011, she had total income of $14,653 and total expenses of $14,815.  Petitioner calculated her income and expenses as follows:

**[*11]** Income and expense report
1/1/11 - 9/14/11

### Income

| | |
|---|---|
| Sales/commission | $8,575 |
| Property management/com. | 1,830 |
| Property management/res. | 1,048 |
| Family transfer/sale ($400/month) | 3,200 |
| Total | [1]14,653 |

### Expenses

| | |
|---|---|
| Advertising | $1,163 |
| Auto (travel) | 40 |
| Auto (service) | 141 |
| Auto (other) | 33 |
| Business | 1,799 |
| Charity | 5 |
| Dining | 290 |
| Dues (Chamber of Commerce) | 150 |
| Filing fee | 4 |
| Food | 83 |
| Promotional | 195 |
| Insurance | 457 |
| Legal fees | 609 |
| Lions Club dues | 100 |
| Materials | 91 |
| Medical (out of pocket) | 1,020 |
| Postage | 43 |
| Supplies | 159 |
| Office (other) | 1,536 |
| Telephone | 3,715 |
| Utilities | 3,182 |
| Total | 14,815 |

[1]Petitioner erroneously calculated her total income to be $13,753.

**[*12]**                                        OPINION

I.      <u>Section 6015</u>

Generally, married taxpayers who file a joint Federal income tax return are jointly and severally liable for the tax reported or reportable on the return. Sec. 6013(d)(3); <u>Butler v. Commissioner</u>, 114 T.C. 276, 282 (2000). Section 6015 allows a spouse to obtain relief from joint and several liability in certain circumstances. Section 6015(a)(1) provides that a spouse who has made a joint return may elect to seek relief from joint and several liability under section 6015(b) (dealing with relief from liability for an understatement of tax with respect to a joint return). Section 6015(a)(2) provides that an eligible spouse may elect to limit that spouse's liability for any deficiency with respect to a joint return under section 6015(c) (dealing with relief from joint and several liability for taxpayers who are no longer married or who are legally separated or no longer living together). If a taxpayer does not qualify for relief under either section 6015(b) or (c), the taxpayer may seek equitable relief under section 6015(f). Under section 6015(f), the Secretary[7] has discretion to grant equitable relief to

---

[7]The term "Secretary" means the Secretary of the Treasury or his delegate. Sec. 7701(a)(11)(B).

**[\*13]** a spouse who filed a joint return with an understatement or underpayment of tax.  See also sec. 1.6015-4(a), Income Tax Regs.

The parties agree that petitioner is not entitled to relief under section 6015(b) or (c) because she is seeking relief from an underpayment of tax, not an understatement of tax or a deficiency in tax.  See Hopkins v. Commissioner, 121 T.C. 73, 88 (2003).  Petitioner contends, however, that she is entitled to relief from joint and several liability under section 6015(f).  Respondent disagrees.

We have jurisdiction to determine whether petitioner qualifies for section 6015(f) relief.  See sec. 6015(e); see also Kollar v. Commissioner, 131 T.C. 191, 196 (2008).

II.     The Standard and Scope of Review

In Porter v. Commissioner, 132 T.C. 203, 210 (2009), we held that, in determining whether a taxpayer is entitled to equitable relief under section 6015(f), we apply a de novo standard and scope of review.[8]  Petitioner bears the burden of proving that she is entitled to relief under section 6015(f).  See id.; see also Rule 142(a)(1).

_____

[8]Respondent disagrees with our holding in Porter v. Commissioner, 132 T.C. 203 (2009).  Respondent argues that the appropriate standard of review in sec. 6015(f) cases is abuse of discretion and the scope of review should be limited to the administrative record.  We decline to revisit our holding in Porter.

[*14] Pursuant to section 6015(f), the Commissioner has prescribed guidelines in

Rev. Proc. 2003-61, 2003-2 C.B. 296,[9] for determining whether a requesting spouse

qualifies for relief under that section.  This Court considers those guidelines, but is

not bound by them, in evaluating the facts and circumstances of a case.  See Pullins

v. Commissioner, 136 T.C. 432, 438-439 (2011); Porter v. Commissioner, 132 T.C.

at 210.

On January 5, 2012, the Internal Revenue Service (IRS) released Notice

2012-8, 2012-4 I.R.B. 309, which proposed a revenue procedure that, if finalized,

would revise the factors the IRS will use to evaluate a requesting spouse's claim

for equitable relief under section 6015(f) and would supersede Rev. Proc. 2003-

61, supra.  Notice 2012-8, supra, states that, "until the revenue procedure is

finalized, the Service will apply the provisions in the proposed revenue procedure

instead of Rev. Proc. 2003-61 in evaluating claims for equitable relief under

section 6015(f)."  However, in Sriram v. Commissioner, T.C. Memo. 2012-91, slip

op. at 9 n.7, we took the position that we would "continue to apply the factors in

Rev. Proc. 2003-61, 2003-2 C.B. 296, in view of the fact that the proposed

revenue procedure is not final and because the comment period under the notice

_____

[9]Rev. Proc. 2003-61, 2003-2 C.B. 296, supersedes Rev. Proc. 2000-15, 2000-1 C.B. 447, and is effective for requests for sec. 6015(f) relief filed on or after November 1, 2003.  Rev. Proc. 2003-61, secs. 6 and 7, 2003-2 C.B. at 299.

[*15] only recently closed."  See also Yosinski v. Commissioner, T.C. Memo. 2012-195, slip op. at 13 n.9; Deihl v. Commissioner, T.C. Memo. 2012-176, slip op. at 29.

The parties contend that this Court should apply the provisions of the proposed revenue procedure set forth in Notice 2012-8, supra, in determining whether petitioner is entitled to equitable relief under section 6015(f).  We decline to do so.  We adopt here an approach similar to the approach used in Sriram.  We shall decide whether petitioner is entitled to relief under section 6015(f) by considering all of the relevant facts and circumstances, evaluating them through the prism of Rev. Proc. 2003-61, supra, and noting where appropriate how the analysis used in Rev. Proc. 2003-61, supra, would change if the proposed revenue procedure in Notice 2012-8, supra, had actually been finalized.

III.    Rev. Proc. 2003-61

A.    Section 4.01:  Threshold Conditions

Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297-298, sets forth seven threshold conditions that a requesting spouse must satisfy to be eligible to submit a request for relief under section 6015(f):  (1) the requesting spouse filed a joint Federal income tax return for the tax year or years for which relief is sought; (2) the requesting spouse does not qualify for relief under section 6015(b) or (c); (3)

**[*16]** the requesting spouse applies for relief no later than two years after the date of the Commissioner's first collection activity after July 22, 1998, with respect to the requesting spouse;[10] (4) no assets were transferred between the spouses as part of a fraudulent scheme by such spouses; (5) the nonrequesting spouse did not transfer disqualified assets to the requesting spouse; (6) the requesting spouse did not file the returns with fraudulent intent; and (7) the liability from which relief is sought is attributable to an item of the nonrequesting spouse, unless an exception applies.

An exception to the seventh threshold condition applies where the requesting spouse shows that he or she was subject to abuse before the time that the return was filed and that, as a result of that abuse, the requesting spouse did not challenge the treatment of any item on the return. See Rev. Proc. 2003-61, sec. 4.01(7)(d), 2003-2 C.B. at 298.

The parties agree that petitioner satisfies the first six threshold conditions. The parties also agree that, to the extent that petitioner's joint liability for 2007 is

---

[10]In Lantz v. Commissioner, 132 T.C. 131 (2009), rev'd, 607 F.3d 479 (7th Cir. 2010), we held that the two-year deadline imposed by Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297, pursuant to sec. 1.6015-5(b)(1), Income Tax Regs., is invalid. Notice 2012-8, 2012-4 I.R.B. 309, 312, proposes to eliminate the two-year deadline and replace it with a requirement that the request for relief be filed within the applicable period of limitations provided by sec. 6502 (relating to collections) or sec. 6511 (relating to claims for credit or refund).

[*17] attributable to Mr. Rozell, she has satisfied the seventh condition. Petitioner contends, however, that she also qualifies for relief, under the abuse exception to the seventh condition, from the part of the liability attributable to her because Mr. Rozell's alcohol addiction constituted abuse.

Petitioner has failed to introduce evidence showing that Mr. Rozell's alcohol addiction, if any, prevented her from challenging any item on their return.[11] Accordingly, petitioner cannot qualify for the abuse exception to the seventh threshold condition even if Mr. Rozell's alcohol addiction constituted abuse.[12] We must decide, however, whether petitioner qualifies for relief with respect to the amount of the tax liability attributable to Mr. Rozell.

B.    Section 4.02:  The Safe Harbor Requirements

If a requesting spouse fulfills the threshold requirements of Rev. Proc. 2003-61, sec. 4.01, the Commissioner ordinarily will grant relief from joint and several liability with respect to underpayments on a joint Federal income tax

---

[11]Petitioner did not introduce any evidence, other than her own testimony, that Mr. Rozell suffered from an alcohol addiction. We shall assume that Mr. Rozell suffered from an alcohol addiction that ultimately led to his death; but we note that the record contains no objective evidence, such as a death certificate or medical records, to confirm petitioner's testimony.

[12]As discussed infra pp. 38-39, petitioner's argument that Mr. Rozell's alcohol addiction constituted abuse also lacks merit.

[*18] return, provided that all of the following additional safe harbor requirements are satisfied: (1) on the date of the request for relief, the requesting spouse is no longer married to, or is legally separated from, the nonrequesting spouse; (2) on the date the requesting spouse signed the joint return, the requesting spouse did not know, and had no reason to know, that the nonrequesting spouse would not pay the tax liability; and (3) the requesting spouse will suffer economic hardship if the Commissioner does not grant relief. Id. sec. 4.02, 2003-2 C.B. at 298.

The parties agree that petitioner was the widow of Mr. Rozell when she requested relief under section 6015(f). However, the parties disagree (1) whether petitioner has shown that she did not know, or have reason to know, that the liability reported on the 2007 return would not be paid and (2) whether petitioner has shown that she would face economic hardship if her request for relief were denied. Accordingly, we address these two issues.

### 1. Knowledge or Reason To Know

Petitioner contends that she reasonably believed that the tax liability would be paid. Respondent contends that petitioner failed to satisfy her duty of inquiry when signing the 2007 return.

In determining whether a taxpayer knew or should have known that a tax liability would not be paid, we impute to a taxpayer knowledge of what she could

[*19] have gleaned from tax returns she signed, had she taken the time to review them.  See Porter v. Commissioner, 132 T.C. at 211-212 (citing Hayman v. Commissioner, 992 F.2d 1256, 1262 (2d Cir. 1993), aff'g T.C. Memo. 1992-228).

Petitioner testified that (1) she did not know that the 2007 return showed that there was tax due when she signed the return, (2) she and Mr. Rozell did not receive any distributions of money or property corresponding to the pass-through income from Hubs, (3) there were no large purchases consistent with the receipt of such a distribution, and (4) she had assumed that Hubs would advance funds to satisfy the tax liability generated by the pass-through income Mr. Rozell received from Hubs.

We find credible petitioner's testimony that when she learned of the outstanding tax liability, she believed that Hubs would advance funds to satisfy that liability.  We are also prepared to find that belief reasonable under the circumstances.  But the question is not whether petitioner reasonably believed that the tax would be paid when she learned of the outstanding liability.  Rather, the question is whether petitioner reasonably believed when she signed the return that the amount shown on the return as tax due would be paid.  See Rev. Proc. 2003-61, sec. 4.02(1)(b).  Petitioner could not have had a reasonable belief that the tax liability would be paid when she signed the return because she did not examine the

**[\*20]** return before signing it and she has conceded that she was unaware there was

tax due when she signed the return.[13]

Petitioner also cannot claim that her failure to review the return before signing

it constitutes reasonable belief that the liability would be paid. As we said in Pullins

v. Commissioner, 136 T.C. at 444: "[A] taxpayer may not obtain the benefits of

joint filing status but then obtain relief from joint and several liability by ignoring or

avoiding facts fully disclosed on a return she signed." Accordingly, petitioner is

charged with knowledge of the liability that was reported on the return she signed.

### 2. Economic Hardship

Petitioner contends that she will suffer economic hardship if she is not

granted relief from joint and several liability because (1) she lost her husband's

income with his death and the passing of his interest in Hubs to Ms. Rozell-

Brandenburg, (2) she lost her home to foreclosure, (3) she had to close her

---

[13]We have previously indicated that a requesting spouse who failed to review the return could satisfy this requirement where reviewing the return would not have caused the requesting spouse to know or have reason to know that the liability shown on the return would not be paid. See Kosola v. Commissioner, T.C. Memo. 2010-34, 99 T.C.M. (CCH) 1141, 1144 (2010). Here, by contrast, had petitioner reviewed the return, she would have had reason to know that the liability shown on the return would go unpaid unless and until she was reassured that Hubs would advance funds to satisfy the liability.

**[*21]** publishing business, and (4) her real estate business has suffered because of the downturn in the real estate markets. Respondent contends that (1) petitioner has not proved that her monthly expenses exceed her monthly income; (2) petitioner was entitled to a portion of the proceeds from Mr. Rozell's estate; (3) through Mr. Rozell's estate, petitioner may be entitled to a part of the distribution from the Betty Rozell trust; (4) petitioner currently owns the Lincoln County property; and (5) petitioner's siblings hold the Linwood and Second Street properties as mere nominees for her because she transferred the Linwood and Second Street properties to her siblings for inadequate consideration and maintains full control over the properties.

In determining whether a requesting spouse will suffer economic hardship if the Commissioner denies his or her request for relief under section 6015(f), Rev. Proc. 2003-61, sec. 4.02, directs the Commissioner to base his decision on rules similar to those found in section 301.6343-1(b)(4), Proced. & Admin. Regs. Section 301.6343-1(b)(4), Proced. & Admin. Regs., provides that an individual suffers economic hardship when the individual is unable to pay reasonable basic living expenses. In determining a reasonable amount for basic living expenses, the Commissioner must consider information provided by the taxpayer, including:

[*22] (A) The taxpayer's age, employment status and history, ability to earn, number of dependents, and status as a dependent of someone else;

(B) The amount reasonably necessary for food, clothing, housing * * *, medical expenses * * *, transportation, current tax payments * * *, alimony, child support, or other court-ordered payments, and expenses necessary to the taxpayer's production of income * * *;

(C) The cost of living in the geographic area in which the taxpayer resides;

(D) The amount of property exempt from levy which is available to pay the taxpayer's expenses;

(E) Any extraordinary circumstances such as special education expenses, a medical catastrophe, or natural disaster; and

(F) Any other factor that the taxpayer claims bears on economic hardship and brings to the attention of the * * * [Commissioner].

Id.

In evaluating a requesting spouse's claim of economic hardship, we are under no obligation to accept self-serving, uncorroborated testimony. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Kosola v. Commissioner, T.C. Memo. 2010-34, 99 T.C.M. (CCH) 1141, 1145 (2010). However, we may accept a requesting spouse's testimony if we find it credible. See, e.g., Washington v. Commissioner, 120 T.C. 137, 150 (2003); Kosola v. Commissioner, 99 T.C.M. (CCH) at 1145.

**[\*23]** The parties have two principal disputes with respect to whether petitioner will suffer economic hardship if denied relief from joint and several liability under section 6015(f): (1) whether petitioner's siblings hold the Linwood and Second Street properties as mere nominees for her, and (2) whether petitioner has adequately proved the amounts of her income and expenses and the value of her equity in her assets. We address each of these disputes in turn.

a. The Linwood and Second Street Properties

We have previously considered the issue of whether a third party holds property as a nominee of a taxpayer by examining whether the Commissioner can collect against such property. See Dalton v. Commissioner, 135 T.C. 393, 404 (2010), rev'd on other grounds, 682 F.3d 149 (1st Cir. 2012). Under sections 6321 and 6331, a lien is imposed, and the Secretary can levy, upon any "property" or "rights to property" belonging to a taxpayer. See Drye v. United States, 528 U.S. 49, 55 (1999); Holman v. United States, 505 F.3d 1060, 1065 (10th Cir. 2007). This includes "'property held by a third party if it is determined that the third party is holding the property as a nominee * * * of the delinquent taxpayer.'" Holman, 505 F.3d at 1065 (quoting Spotts v. United States, 429 F.3d 248, 251 (6th Cir. 2005)) (alteration in original); see also Dalton v. Commissioner, 135 T.C. at 404. Application of nominee principles to support a lien or levy turns on a two-part

**[\*24]** inquiry. The first part of the inquiry looks "to state law to determine what rights the taxpayer has in the property the Government seeks to reach." Drye, 528 U.S. at 58; see also Holman, 505 F.3d at 1067-1068; Dalton v. Commissioner, 135 T.C. at 405. The second part of the inquiry looks "to [F]ederal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of * * * [sections 6321 and 6331]." Drye, 528 U.S. at 58; see also Holman, 505 F.3d at 1067-1068; Dalton v. Commissioner, 135 T.C. at 405.

In deciding whether a third party holds property as a nominee for a taxpayer in Oklahoma, courts have turned to Oklahoma fraudulent conveyance principles. See Dalton v. Commissioner, 135 T.C. at 408 (citing United States v. Stinson, 386 F. Supp. 2d 1207, 1218 (W.D. Okla. 2005)). Under Oklahoma's Uniform Fraudulent Transfer Act,

> A. A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> 1. with actual intent to hinder, delay, or defraud any creditor of the debtor; or * * *.

**[*25]** Okla. Stat. Ann. tit. 24, sec. 116(A) (West 2008).  In determining a debtor's

intent,

consideration may be given, among other factors, to whether:

1.  the transfer or obligation was to an insider;

2.  the debtor retained possession or control of the property transferred after the transfer;

3.  the transfer or obligation was disclosed or concealed;

4.  before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

5.  the transfer was of substantially all the debtor's assets;

6.  the debtor absconded;

7.  the debtor removed or concealed assets;

8.  the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

9.  the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

10.  the transfer occurred shortly before or shortly after a substantial debt was incurred; and

11.  the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Okla. Stat. Ann. tit. 24, sec. 116(B); see also Stinson, 386 F. Supp. 2d at 1218

("Under Oklahoma law, the indicia of a fraudulent conveyance include inadequate

[*26] consideration, insolvency of the transferor, a familial relationship between the transferor and transferee, the pendency or threat of litigation, and the transfer of the debtor's entire estate." (citing Ebey-McCauley Co. v. Smith, 353 P.2d 23, 28 (Okla. 1960))).

Petitioner testified that she sold the Linwood and Second Street properties to her sister, Ms. Hudgins, and her brother, Mr. Hudgins, in installment sales. Petitioner further testified that, under these installment sales, she continued to collect the rents and pay all expenses on the properties and that she never turned over any of the rents to her siblings. When asked to explain why she set up such an arrangement, petitioner testified that she entered into this arrangement because she could no longer afford to maintain the properties in the event that they required significant repairs.

We do not find petitioner's testimony regarding the transfer of the Linwood and Second Street properties to be credible, for two reasons. First, the quitclaim deeds regarding the Linwood and Second Street properties bore no documentary tax stamps and stated that the conveyances were "family transfer[s]". Oklahoma imposes a documentary stamp tax on each deed conveying land when the consideration or value of the property conveyed, exclusive of the value of any encumbrance on the property, exceeds $100. Okla. Stat. Ann. tit. 68, sec. 3201(A)

**[\*27]** (West 2001). The documentary stamp tax is prorated at the rate of 75 cents per $500 of consideration, including future consideration. Id. sec. 3201(A), (C)(3). Deeds between persons related within the second degree of consanguinity without consideration are exempt from the tax. Id. sec. 3202(4) (West 2001 & Supp. 2012). Accordingly, by recording the quitclaim deeds as family transfers, petitioner represented to the State of Oklahoma that she did not, and will not, receive consideration for the properties.

Second, petitioner failed to introduce (1) copies of the installment sale agreements, (2) any corroboration that she obtained, or will require, any assistance from her siblings in maintaining the Linwood and Second Street properties, or (3) any evidence, other than her own unsupported testimony, regarding her remaining equity in the properties. Lacking such corroboration, we decline to accept petitioner's self-serving testimony. See Broz v. Commissioner, 137 T.C. 46, 59 (2011) ("We need not accept the taxpayer's self-serving testimony when the taxpayer fails to present corroborative evidence."); Tokarski v. Commissioner, 87 T.C. at 77.

We observe that (1) petitioner transferred the properties to her relatives, see Okla. Stat. Ann. tit. 24, sec. 113(7)(a)(1) (defining "[i]nsider" to include "a relative of the debtor"); (2) petitioner continued to exercise full control over the

[*28] properties, such as by collecting rent on and paying expenses for the properties, after the transfers; (3) petitioner did not disclose the transfer of the properties for less than full consideration on her Form 433-A; (4) the transfers were made during the pendency of petitioner's efforts to secure relief under section 6015(f); and (5) petitioner received inadequate consideration for the properties. Accordingly, on the evidence before us, we conclude that petitioner fraudulently conveyed the Linwood and Second Street properties under Oklahoma's Uniform Fraudulent Transfer Act.

We now turn to the second part of the inquiry to decide, under Federal law, whether petitioner's interests in the Linwood and Second Street properties constitute "property" or a "right[] to property" under sections 6321 and 6331. Under Oklahoma's Uniform Fraudulent Transfer Act, "a creditor * * * may obtain * * * an attachment or other provisional remedy against the asset transferred". Okla. Stat. Ann. tit. 24, sec. 119(A) (West 2008). Because creditors can attach transferred properties under Oklahoma law, we find that petitioner's interests in the transferred properties are "property" or a "right[] to property" under sections 6321 and 6331. See Drye, 528 U.S. at 58 (holding that a disclaimed inheritance is "property" or a "right[] to property" under sections 6321 and 6331, even though creditors could not reach the disclaimed inheritance under state law); see also

**[*29]** United States v. Krause (In re Krause), 637 F.3d 1160, 1166 (10th Cir. 2011) ("[T]he terms 'property' and 'rights to property' * * * embrace not only rights or interest[s] with exchangeable value that the taxpayer holds formal legal title to, but also those that the taxpayer * * * is found under state law to have fraudulently conveyed to a nominee."); Dalton v. Commissioner, 135 T.C. at 407.

Accordingly, for the purposes of deciding whether petitioner will suffer economic hardship if denied relief from joint and several liability under section 6015(f), we conclude that her siblings hold the Linwood and Second Street properties as mere nominees for her.

#### b. Petitioner's Income, Expenses, and Assets

The administrative record shows that in January 2010 petitioner was 57 years old and had no dependents. Petitioner's 2006-10 tax returns show that she reported items of income, for at least some of those years, from her real estate business, her publishing business, and from renting out the Linwood property. At trial petitioner conceded that the Second Street rental was currently profitable. Petitioner also concedes that she currently owns the Lincoln County property.

Petitioner testified that she closed her publishing business in November 2010 because it was starting to lose money and because her mother could no longer write for her on account of her mother's deteriorating health. However,

**[\*30]** petitioner failed to introduce any books, records, or other evidence showing that the publishing business was no longer viable or that the publishing business was too burdensome to continue on account of her mother's deteriorating health. Lacking corroboration, we decline to accept petitioner's self-serving testimony. See Tokarski v. Commissioner, 87 T.C. at 77.

Petitioner testified that she now pays her father rent of $550 per month and that she is paying for her own utilities. Petitioner, however, also testified that her father would not accept any rent payments from her and that she is now living with her mother. Petitioner introduced no evidence to corroborate her testimony. Lacking corroboration, we decline to accept petitioner's self-serving testimony. See id. Accordingly, on the evidence before us, we cannot determine whether petitioner is currently incurring housing and utility expenses.

Other than her 2006-10 tax returns, an unsupported and incomplete Form 433-A, and some limited testimony, petitioner has failed to produce any books, records, or other credible evidence to support her claimed income and expenses. Without such evidence, we are unable to determine petitioner's income or expenses.

Petitioner also failed to introduce any evidence that would enable us to determine her equity in the Linwood, Second Street, and Lincoln County

**[*31]** properties or her monthly rental income from the Linwood and Second Street properties. Petitioner testified that she thought that she had equity in the Linwood and Second Street properties of $6,000 and $1,000, respectively and that she listed the Lincoln County property for sale for $30,000. Petitioner also testified that the Linwood and Second Street properties produced a combined $750 in gross income and $400 in net income per month. Petitioner introduced no evidence to corroborate her testimony. Lacking corroboration, we decline to accept petitioner's self-serving testimony. See id.

Accordingly, we find that petitioner has failed to show that she will suffer economic hardship if denied relief under section 6015(f).[14] See Rule 142(a)(1).

In summary, we conclude that petitioner has not satisfied the safe harbor requirements of Rev. Proc. 2003-61, sec. 4.02, because she has failed to satisfy her burden of showing that she reasonably believed that the tax due on the 2007 return would be paid and that she will suffer economic hardship if denied relief.

---

[14]Because we conclude on other grounds that petitioner has not shown that she would suffer economic hardship if denied relief, we need not decide whether petitioner's interest in Mr. Rozell's estate and potential interest in the Betty Rozell trust also preclude her from showing that she will suffer economic hardship if denied relief.

**[\*32]** C.      <u>Section 4.03:  Factors for Determining Whether To Grant Equitable Relief</u>

If a requesting spouse satisfies the threshold conditions of Rev. Proc. 2003-61, sec. 4.01, but fails to satisfy one or more of the safe harbor requirements of Rev. Proc. 2003-61, sec. 4.02, the Commissioner may still grant relief under section 6015(f) on the basis of several additional factors.  <u>See</u> Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B. at 298-299.  The following list is not exclusive, and no single factor is determinative:

      (a) Factors that may be relevant to whether the Service will grant equitable relief include, but are not limited to, the following:

      (i) <u>Marital status</u>.  Whether the requesting spouse is separated (whether legally separated or living apart) or divorced from the nonrequesting spouse.  * * *

      (ii) <u>Economic hardship</u>.  Whether the requesting spouse would suffer economic hardship (within the meaning of section 4.02(1)(c) of this revenue procedure) if the Service does not grant relief from the income tax liability.

      (iii) <u>Knowledge or reason to know</u>.

      (A) <u>Underpayment cases</u>.  In the case of an income tax liability that was properly reported but not paid, whether the requesting spouse did not know and had no reason to know that the nonrequesting spouse would not pay the income tax liability.

**[\*33]**　　　 \*　　\*　　\*　　\*　　\*　　\*　　\*

(C) <u>Reason to know</u>.  For purposes of (A) and (B) above, in determining whether the requesting spouse had reason to know, the Service will consider the requesting spouse's level of education, any deceit or evasiveness of the nonrequesting spouse, the requesting spouse's degree of involvement in the activity generating the income tax liability, the requesting spouse's involvement in business and household financial matters, the requesting spouse's business or financial expertise, and any lavish or unusual expenditures compared with past spending levels.

(iv) <u>Nonrequesting spouse's legal obligation</u>.  Whether the nonrequesting spouse has a legal obligation to pay the outstanding income tax liability pursuant to a divorce decree or agreement.  \* \* \*

(v) <u>Significant benefit</u>.  Whether the requesting spouse received significant benefit (beyond normal support) from the unpaid income tax liability or item giving rise to the deficiency.  \* \* \*

(vi) <u>Compliance with income tax laws</u>.  Whether the requesting spouse has made a good faith effort to comply with income tax laws in the taxable years following the taxable year or years to which the request for relief relates.

(b) Factors that, if present in a case, will weigh in favor of equitable relief, but will not weigh against equitable relief if not present in a case, include, but are not limited to, the following:

(i) <u>Abuse</u>.  Whether the nonrequesting spouse abused the requesting spouse.  The presence of abuse is a factor favoring relief.  A history of abuse by the nonrequesting spouse may mitigate a requesting spouse's knowledge or reason to know.

(ii) <u>Mental or physical health</u>.  Whether the requesting spouse was in poor mental or physical health on the date the requesting spouse signed the return or at the time the requesting spouse

**[*34]** requested relief.  The Service will consider the nature, extent, and duration of illness when weighing this factor.

Id. sec. 4.03(2).  We now consider each of these factors.

### 1. Marital Status

Petitioner was widowed from Mr. Rozell when she requested relief.

Accordingly, this factor favors relief.

### 2. Economic Hardship

For the reasons discussed supra pp. 20-31, we find that petitioner would not

suffer economic hardship if her request for relief under section 6015(f) were

denied.  Accordingly, this factor weighs against relief.[15]  See Sriram v.

Commissioner, slip op. at 18.

### 3. Knowledge or Reason To Know

For the reasons discussed supra pp. 18-20, petitioner should have known

that there was tax due on the return when she signed it and she could not have

---

[15]The Commissioner proposes in Notice 2012-8, sec. 4.03(2)(b), 2012-4 I.R.B. at 313, that the economic hardship factor should be considered neutral where denying relief from joint and several liability will not result in economic hardship to the requesting spouse.

**[\*35]** reasonably believed that the tax due on the return would be paid when she signed the return.[16]  Accordingly, this factor weighs against relief.

### 4. Nonrequesting Spouse's Legal Obligation

Petitioner and Mr. Rozell were not divorced.  Accordingly, this factor is neutral.  See Bland v. Commissioner, T.C. Memo. 2011-8, 101 T.C.M. (CCH) 1023, 1025 (2011).

### 5. Significant Benefit

Petitioner contends that she received no significant benefit from the underpayment of tax due to income items attributable to Mr. Rozell because she and Mr. Rozell neither received nor spent distributions corresponding to the pass-through income from Hubs.  Respondent concedes that there is no evidence that petitioner received significant benefit from the underpayment of tax but contends that this factor should be considered neutral because Mr. Rozell also did not receive significant benefit from the underpayment of tax.

Respondent cites no cases holding that the nonrequesting spouse must receive significant benefit from an understatement or underpayment of tax for this

---

[16]Petitioner failed to introduce any evidence suggesting that Mr. Rozell was deceitful or evasive with respect to the 2007 return.  Additionally, as discussed infra pp. 38-39, petitioner's contention that Mr. Rozell's alcohol addiction constituted abuse is meritless.

[*36] factor to favor relief. The plain language of Rev. Proc. 2003-61, sec. 4.03(2)(a)(v), does not so require. However, the revenue procedure proposed by Notice 2012-8, supra, provides as follows:

> If only the nonrequesting spouse significantly benefitted from the unpaid tax or item giving rise to an understatement or deficiency, and the requesting spouse had little or no benefit, or the nonrequesting spouse enjoyed the benefit to the requesting spouse's detriment, this factor will weigh in favor of relief. If the amount of unpaid tax or understated tax was small such that neither spouse received a significant benefit, then this factor is neutral.

Notice 2012-8, 2012-4 I.R.B. at 314.

As discussed supra pp. 14-15, we have not yet adopted the mode of analysis proposed by Notice 2012-8, supra. We are also not convinced that the analysis proposed by Notice 2012-8, supra, would require the nonrequesting spouse to significantly benefit from the underpayment or understatement of tax for this factor to favor relief where the underpayment or understatement of tax is large.

Moreover, we disagree with respondent's assertion that Mr. Rozell received no significant benefit from the pass-through income from Hubs. Mr. Rozell owned a 25% share of Hubs. When a shareholder of an S corporation is required to report income of the S corporation, the shareholder's basis in the S corporation stock is increased accordingly. Sec. 1367(a)(1)(A). Because Hubs never made a corresponding distribution of any money or property to Mr. Rozell, see sec.

[*37] 1368(b)(1) and (c)(1), Mr. Rozell's basis in Hubs was thus greater than it would have been without the pass-through income. This was a significant benefit to Mr. Rozell but not to petitioner. Accordingly, even under respondent's view, this factor favors relief.

### 6. Compliance With Income Tax Laws

Petitioner contends that she has complied with the income tax laws for the years following 2007. Respondent contends that petitioner filed her 2009 Federal income tax return, which was due on April 15, 2010, on October 4, 2010, and that respondent has no record of receiving a request for an extension of time to file her return for that year.

Petitioner's 2009 return showed no tax due. Petitioner's 2009 return that was submitted into evidence includes a Form 4868, Application for Automatic Extension of Time To File U.S. Individual Income Tax Return. The Form 4868 is stamped as received by respondent on October 4, 2010, the same date that respondent received petitioner's 2009 return. Petitioner has submitted no evidence suggesting that she timely requested an extension of time to file her 2009 return. Critically, petitioner never testified as to whether she requested an extension of time to file her 2009 return. Lacking evidence that petitioner timely requested an extension of time to file her 2009 return, we must assume that she did not. See

**[\*38]** Rule 142(a)(1).  However, because (1) the 2009 return showed no tax due, (2) petitioner has timely filed in all other years since 2007, and (3) petitioner contends that she timely requested an extension of time to file for 2009, we conclude that this factor is neutral.

### 7.    Abuse

Abuse can be both physical and psychological.  See Nihiser v. Commissioner, T.C. Memo. 2008-135, 95 T.C.M. (CCH) 1531, 1536-1537 (2008).  Generally, "nonphysical abuse will weigh in favor of relief only where it is severe enough to incapacitate a requesting spouse in the same manner he or she would be incapacitated by physical abuse."  Pugsley v. Commissioner, T.C. Memo. 2010-255, 100 T.C.M. (CCH) 454, 458 (2010).

Petitioner failed to introduce evidence showing that Mr. Rozell physically or psychologically abused her.  Instead, petitioner contends that Mr. Rozell's alcohol addiction constituted a form of abuse.  Petitioner has not cited any cases holding that a nonrequesting spouse's alcohol addiction, by itself, constitutes a form of abuse favoring equitable relief under section 6015(f).[17]  Moreover, petitioner failed

---

[17]Petitioner cites Notice 2012-8, supra, which proposes to supersede Rev. Proc. 2003-61, supra, with a provision that "[t]he impact of a nonrequesting spouse's alcohol or drug abuse is also considered in determining whether a requesting spouse was abused."  See Notice 2012-8, 2012-4 I.R.B. at 314.  We

(continued...)

**[*39]** to introduce expert testimony supporting her contention that Mr. Rozell's

alcohol addiction constituted psychological abuse. Our cases require more than

alcohol addiction by the nonrequesting spouse for a finding of abuse under section

6015(f). See Nihiser v. Commissioner, 95 T.C.M. (CCH) at 1536-1537.

Accordingly, this factor is neutral. See Rev. Proc. 2003-61, sec. 4.03(2)(b)(i).

    8.    Mental or Physical Health

Petitioner has introduced no evidence showing that her mental or physical

health was impaired either when she signed the return or when she requested relief.

Lacking such evidence, we find that petitioner did not have a physical or mental

impairment at the relevant times. See Rule 142(a)(1). Accordingly, this factor is

neutral. See Rev. Proc. 2003-61, sec. 4.03(2)(b)(ii).

In summary, two of the eight factors set out in Rev. Proc. 2003-61, sec. 4.03,

favor granting relief, four factors are neutral, and two factors weigh against

granting relief. Petitioner had the burden of proof as to persuasion, and if this were

a matter of simply counting factors for and against relief, she would lose. In

---

[17](...continued)
agree that alcohol and drug addiction can be a factor in determining that a requesting spouse was abused, see Nihiser v. Commissioner, T.C. Memo. 2008-135, 95 T.C.M. (CCH) 1531, 1537 (2008), but we do not agree, and we do not read Notice 2012-8, supra, as proposing, that a nonrequesting spouse's alcohol or drug addiction, by itself, constitutes abuse under sec. 6015(f).

[*40] section 6015(f) cases, however, we do not simply count factors. We evaluate all of the relevant facts and circumstances to reach a conclusion. See Pullins v. Commissioner, 136 T.C. at 448; Rev. Proc. 2003-61, sec. 4.03(2). Some of the most compelling facts in our analysis are the findings that petitioner fraudulently conveyed the Linwood and Second Street properties and failed to disclose her interest in the Lincoln County property. These weigh heavily against relief in our view because a spouse requesting equitable relief under section 6015(f) should come to the table with clean hands. Petitioner took affirmative steps to minimize her asset ownership in order to distort the economic analysis conducted with respect to her section 6015(f) request for relief. Accordingly, we conclude that petitioner is not entitled to relief from joint and several liability under Rev. Proc. 2003-61, sec. 4.03.[18]

IV.    Conclusion

On the basis of the foregoing, we conclude that petitioner has failed to satisfy the safe harbor requirements of Rev. Proc. 2003-61, sec. 4.02, and the equitable factors set forth in Rev. Proc. 2003-61, sec. 4.03. Accordingly, we hold

---

[18]For the reason discussed above, we would reach the same conclusion even if we were to evaluate petitioner's request for relief under the procedure proposed by Notice 2012-8, supra.

**[*41]** that petitioner is not entitled to relief from joint and several liability under section 6015(f).

We have considered all other arguments made by the parties, and to the extent not discussed above, find those arguments to be irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.