T.C. Summary Opinion 2017-7

UNITED STATES TAX COURT

LAVERNE RENEE HUDSON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20015-15S.                    Filed February 8, 2017.

Laverne Renee Hudson, pro se.

<u>Trevor B. Maddison</u>, for respondent.

SUMMARY OPINION

ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Petitioner applied to the Internal Revenue Service (IRS) for relief from joint and several liability, commonly called innocent spouse relief.  After receiving no response from the IRS and waiting the requisite period of time, petitioner filed a petition with the Court.[2]

The sole issue for decision by the Court is whether petitioner is entitled to relief from joint and several liability under section 6015(f) for 2008.  We hold that she is.

---

[1] Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code, as amended and in effect at all relevant times.  All Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Usually the Court's jurisdiction in an innocent spouse case is founded on a notice of final determination denying a requesting spouse's application for relief.  Sec. 6015(e)(1)(A)(i)(I).  Even though petitioner did not receive such a notice, the Court has jurisdiction under sec. 6015(e)(1)(A)(i)(II) because petitioner filed her petition more than six months after applying to the IRS for sec. 6015 relief.

## Background

Some of the facts have been stipulated, and they are so found. The Court incorporates by reference the parties' stipulation of facts and accompanying exhibits.

Petitioner resided in the State of Maryland at the time that the petition was filed with the Court.

In November 1993 petitioner married Anthony W. Hudson. The couple has three children, who were born in 1995, 1996, and 1998. Petitioner and Mr. Hudson remain legally married, but they are essentially estranged. Petitioner has remained in the marriage because she regards the vow of marriage as sacrosanct and does not believe in divorce. Petitioner has not enjoyed the benefits of a lavish lifestyle at any time during her marriage.

In November 1995 petitioner and Mr. Hudson acquired a single-family residence on Belair Drive in Bowie, Maryland (Belair Drive property). Petitioner and Mr. Hudson purchased the Belair Drive property jointly, and they resided there until 2008.

In 2008 Mr. Hudson purchased a single-family residence on Alyssa Court in Brandywine, Maryland (Alyssa Court property). Mr. Hudson is the sole owner of the Alyssa Court property. Petitioner and Mr. Hudson resided at the Alyssa Court

property from 2008 through 2014. Petitioner and Mr. Hudson continued to own the Belair Drive property, which they rented to petitioner's parents from 2008 through 2014. Petitioner and Mr. Hudson subsequently moved back to the Belair Drive property in 2014 when petitioner's parents moved to a senior living facility.

On December 1, 2009, petitioner and Mr. Hudson filed a joint Federal income tax return for 2008. Much of the liability reported on the return went unpaid. The unpaid portion was largely attributable to an early withdrawal by Mr. Hudson in 2008 from his retirement account that he used to finance his purchase of the Alyssa Court property.

Petitioner holds a bachelor of arts degree in justice. Although she spent most of her married life as a homemaker, in August 2012 she began work as a criminal assistant in the Office of the Clerk of the Circuit Court for Prince George's County, Maryland, a position that paid a modest salary. In December 2013 petitioner resigned her position because of increased stress related to work and home life. Since then she has been unemployed although she has recently begun to actively seek new employment.

In 2013 Mr. Hudson filed for liquidating bankruptcy under chapter 7 of the Bankruptcy Act. In 2014 he was granted a discharge by the bankruptcy court that

included the unpaid Federal tax liability for 2008. Notwithstanding his bankruptcy proceeding, Mr. Hudson continues to own the Alyssa Court property.[3]

In June 2014 petitioner filed Form 8857, Request for Innocent Spouse Relief, seeking relief from joint and several liability for the unpaid liability reported on the 2008 Federal income tax return that she and Mr. Hudson had filed. On the Form 8857 petitioner reported monthly income of $1,753 and monthly expenses of $2,240. Petitioner's monthly income consisted in part of gifts from family members but mostly from rental income attributable to the Belair Drive property.

Later in 2014 petitioner's vehicle was repossessed.

In April 2016 petitioner was notified by the Motor Vehicle Administration of the State of Maryland that her driver's license would not be renewed if unpaid State taxes were not fully paid. A letter from the comptroller of Maryland indicates that the taxes relate to individual income tax for 2008.

In October 2016 petitioner entered into a consumer debt settlement program on the basis of financial hardship in order to obtain help consolidating and managing her nontax debts.

---

[3] For the fiscal year ending June 30, 2017, the assessed value of the Alyssa Court property for real estate tax purposes is $603,500.

Petitioner is currently unemployed and struggles to pay her reasonable living expenses. Her parents, her sister, and her friends also provide some financial support.

Discussion

In general, a spouse who files a joint Federal income tax return is jointly and severally liable for the entire tax liability. Sec. 6013(d)(3). However, a spouse seeking relief from joint and several liability (i.e., so-called innocent spouse relief) must follow procedures set forth in section 6015. If the liability involves the nonpayment of tax reported on a joint return, the only relief that is available is that prescribed under section 6015(f). See Hopkins v. Commissioner, 121 T.C. 73, 88 (2003); see also Block v. Commissioner, 120 T.C. 62, 66 (2003). In that regard section 6015(f) authorizes the Commissioner to grant equitable relief from joint and several liability if, taking into account all of the facts and circumstances, it is inequitable to hold a taxpayer liable for the unpaid tax.

In deciding whether petitioner is entitled to section 6015(f) relief the Court applies a de novo scope and standard of review. See Porter v. Commissioner, 132

T.C. 203, 210 (2009). The spouse requesting relief generally bears the burden of proving that she is entitled to relief.[4] See id. (citing Rule 142(a)).

The Commissioner has published guidance setting forth criteria to be considered in determining whether a requesting spouse is entitled to relief under section 6015(f). See Rev. Proc. 2013-34, sec. 4, 2013-43 I.R.B. 397, 399-403. In deciding a case, the Court considers these factors as well as any other relevant factors. Although the Court consults these guidelines, see Washington v. Commissioner, 120 T.C. 137, 147-152 (2003), the Court is not bound by them in that our decision ultimately turns on an evaluation of all of the facts and circumstances, see Pullins v. Commissioner, 136 T.C. 432, 438-439 (2011); Porter v. Commissioner, 132 T.C. at 210; Hudgins v. Commissioner, T.C. Memo. 2012-260.

Under the Commissioner's published guidance, the requesting spouse must first satisfy certain threshold conditions set forth in Rev. Proc. 2013-34, sec. 4.01, 2013-43 I.R.B at 399. Respondent does not address those conditions, let alone dispute that they are satisfied. As a result, the Court proceeds as if they are.[5]

_____

[4] Either spouse may be entitled to relief under sec. 6015(f). This Summary Opinion uses the pronoun "she" because Mrs. Hudson is the petitioner.

[5] The evidentiary record also supports this approach.

When the threshold conditions have been satisfied, the Commissioner will ordinarily grant relief with respect to an underpayment of tax if the requesting spouse satisfies each of the so-called streamlined requirements set forth in Rev. Proc. 2013-34, sec. 4.02, 2013-43 I.R.B. at 400. Petitioner does not qualify for streamlined relief because she remains married to Mr. Hudson. See id. sec. 4.02(1), 4.03(2)(a).

Where a requesting spouse meets the threshold conditions but fails to qualify for a streamlined determination, she may still be eligible for equitable relief if, taking into account all of the facts and circumstances, it would be inequitable to hold her liable for the unpaid tax. See id. sec. 4.03(1). The guidelines list the following nonexclusive factors that the Commissioner takes into account in determining whether to grant equitable relief: (1) marital status; (2) economic hardship; (3) knowledge or reason to know that the tax liability would or could not be paid; (4) legal obligation; (5) significant benefit from the unpaid income tax liability; (6) compliance with income tax laws; and (7) mental or physical health at the time of filing. Id. sec. 4.03(2).

We shall not analyze individually all seven of the factors enumerated in Rev. Proc. 2013-34, sec. 4.03, as several of them are neutral and some are of little importance. Instead, we shall focus on what we regard as the two most important

factors that inform our decision, i.e., (1) economic hardship and (2) significant benefit, or more precisely, lack of significant benefit, from the unpaid liability. See Hudgins v. Commissioner, T.C. Memo. 2012-260, at *39-*40 ("In section 6015(f) cases * * * we do not simply count factors."); Cullen v. Commissioner, T.C. Memo. 2004-176, 2004 WL 1682835 at *6 ("[S]ome factors are more important than others * * * [and may] dictate the ultimate result.").

Economic Hardship

Rev. Proc. 2013-34, sec. 4.03(2)(b), 2013-43 I.R.B. at 401, states that an economic hardship "exists if satisfaction of the tax liability in whole or in part will cause the requesting spouse to be unable to pay reasonable basic living expenses." A determination whether a requesting spouse will suffer economic hardship is based on rules similar to those in section 301.6343-1(b)(4), Proced. & Admin. Regs. The facts and circumstances considered in this inquiry include: (1) the requesting spouse's age, employment status and history, ability to earn, and number of dependents; (2) the amount reasonably necessary for food, clothing, housing, medical expenses, transportation, and current tax payments; (3) any extraordinary circumstances such as special education expenses, a medical catastrophe, or a natural disaster; and (4) any other factor bearing on economic hardship. Id. In addition, the IRS considers the requesting spouse's current

income (including how the requesting spouse's income compares to Federal poverty guidelines) and assets in comparison with his or her expenses. Rev. Proc. 2013-34, sec. 4.03(2)(b).

Although we are not required to accept a taxpayer's testimony uncritically, see Ishizaki v. Commissioner, T.C. Memo. 2001-318, neither are we required to reject a taxpayer's testimony if we find it credible, see, e.g., Washington v. Commissioner, 120 T.C. at 150. We accept petitioner's testimony, as we found her to be thoroughly honest, forthright, and credible and her testimony to be compelling.

On Form 8857 petitioner reported that her monthly income was $1,753 and that her monthly expenses were $2,240. Most of the monthly income that she listed on Form 8857 was rental income from the Belair Drive property. However, at some point in 2014 (after she had submitted the Form 8857) petitioner no longer received rental income from that property because the prior tenants, her parents, had moved into a senior living facility during that year and ceased paying rent. Shortly thereafter, petitioner and Mr. Hudson moved back into the Belair Drive property, where she currently resides. Insofar as the Alyssa Court property is concerned, the record is unclear whether it is income producing; regardless,

however, petitioner has no ownership interest in that property, as it is owned solely by Mr. Hudson.

Petitioner no longer owns a car since hers was repossessed in 2014. Additionally, petitioner is precluded from renewing her driver's license until her Maryland State income taxes are paid. Petitioner also has incurred nontax debt and recently entered into a consumer debt program on the basis of financial hardship in order to obtain help consolidating and managing nontax debts. All of these matters negatively affect her employment prospects.

Petitioner is currently unemployed and receives some financial support from her parents, her sister, and her friends. She struggles to pay her reasonable living expenses.

In sum, we find that requiring petitioner to pay the outstanding Federal income tax liability for 2008 would result in financial hardship to her.

Lack of Significant Benefit From the Unpaid Liability

Rev. Proc. 2013-34, sec. 4.03(2)(e), 2013-43 I.R.B. at 402, states that generally "[a] significant benefit is any benefit in excess of normal support", such as the benefits of a lavish lifestyle, in which instance this factor will weigh against relief. On the other hand, "[i]f only the nonrequesting spouse significantly benefitted from the unpaid tax * * *, and the requesting spouse had little or no

benefit, or the nonrequesting spouse enjoyed the benefit to the requesting spouse's detriment, this factor will weigh in favor of relief." Id.

Petitioner has not enjoyed the benefits of a lavish lifestyle; indeed, her lifestyle, particularly in recent years, has been quite the contrary. Further, the unpaid portion of the tax that was reported on the joint Federal income tax return that petitioner and Mr. Hudson filed for 2008 was largely attributable to the early withdrawal made by Mr. Hudson from his retirement account that he used to finance his purchase of the Alyssa Court property. Mr. Hudson titled that property in his sole name, and petitioner has never had an ownership interest in it.[6]

In sum, we find that Mr. Hudson significantly benefited from the unpaid Federal income tax for 2008 and that petitioner did not. We further find that if relief were not available to petitioner under section 6015(f), then Mr. Hudson would benefit from that unpaid tax to petitioner's detriment because his liability for the unpaid tax for 2008 was discharged in bankruptcy. See Rev. Proc. 2013-34, sec. 4.03(2)(e).

---

[6] As previously mentioned, notwithstanding his bankruptcy proceeding Mr. Hudson continues to own the Alyssa Court property, the current assessed value of which is $603,500.

## Conclusion

In view of the foregoing, and on the basis of our review of all of the facts and circumstances, we hold that it would be inequitable to hold petitioner liable for the unpaid Federal income tax for 2008.  Accordingly, she is entitled to relief from joint and several liability under section 6015(f) for that year.

To reflect the foregoing,

Decision will be entered

for petitioner.