**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2014-30

UNITED STATES TAX COURT

ERIKA G. BARRERA, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2334-13S.                          Filed April 1, 2014.

<u>Jaime Vasquez</u>, for petitioner.

<u>Jeffrey D. Heiderscheit</u> and <u>Daniel N. Price</u>, for respondent.

SUMMARY OPINION

GUY, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions

of section 7463 in effect when the petition was filed.[1]  Pursuant to section 7463(b),

---

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code, as amended and in effect at all relevant times, and all Rule

(continued...)

the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

By final notice of determination dated November 19, 2012, respondent denied petitioner's claim for relief from joint and several liability under section 6015 for a Federal income tax deficiency for 2009. Petitioner filed with the Court a timely petition for review of respondent's determination under section 6015(e). The issue for decision is whether petitioner qualifies for relief under section 6015.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference. Petitioner resided in Texas at the time the petition was filed.

## I. Petitioner's Background

Petitioner married Johnny Joe Moncada on May 2, 1996, and they have one child. Petitioner has been employed as an administrative technician by the U.S. Department of Defense (DOD) since 1999. During 2009 she earned $54,280 working for the DOD.

---

[1](...continued)
references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

## II. Mr. Moncada's Employment

Mr. Moncada retired from the Army in 2008. During 2009 he earned wages of $64,750, $19,091, and $4,966 working for the DOD, Harding Security Associates, Inc. (Harding Security), and the Directorate for Network Ops (DNO), respectively. Mr. Moncada also received retired pay of $29,249 from the DOD during 2009. Petitioner testified that she was never sure who Mr. Moncada worked for but that she understood that he worked in the "intelligence" field.

## III. Household Finances

Petitioner and Mr. Moncada maintained two joint checking accounts with USAA Federal Savings Bank (USAA) and a joint account with Randolph Brooks Federal Credit Union (Randolph Brooks). Petitioner's paychecks were deposited into the Randolph Brooks account, and she paid most of the household expenses from that account. The wages that Mr. Moncada earned from the DOD and Harding Security were deposited into the couple's USAA account ending in 9933, while his DOD retired pay was deposited into the second USAA account ending in 9925.

The USAA account statements show that Harding Security paid wages to Mr. Moncada from December 23, 2008, to March 24, 2009, and the DOD paid wages to Mr. Moncada from March 19, 2009, through the end of the year.

Petitioner received monthly USAA account statements for the account ending in 9933, and she withdrew funds from and incurred charges against the account. She testified that she normally informed Mr. Moncada before withdrawing funds from the account. Petitioner maintains that she was unaware of the USAA account ending in 9925 before these proceedings were initiated.

Petitioner's brother resided with petitioner and Mr. Moncada in Texas, and it appears that he also had access to the funds in the USAA account ending in 9933.

IV. Separation and Divorce

During the first half of 2009 petitioner and Mr. Moncada resided together in Texas. In July of that year Mr. Moncada was deployed to Guam, and petitioner moved there with him. The couple experienced marital difficulties shortly thereafter, and petitioner moved back to Texas in September 2009.

Petitioner and Mr. Moncada were divorced in August 2011. The terms of the divorce were memorialized in a final decree of divorce, incorporating the couple's agreement incident to divorce, which states in relevant part that petitioner and Mr. Moncada:

> shall be equally responsible for all federal income tax liabilities of the
> parties from the date of marriage through December 31, 2010, and
> each party shall timely pay 50 percent of any deficiencies,

assessments, penalties, or interest due thereon and shall indemnify and hold the other party and his or her property harmless from 50 percent of such liabilities unless such additional tax, penalty, and/or interest resulted from a party's omission of taxable income or claim of erroneous deductions. In such case, the portion of tax, penalty, and/or interest relating to the omitted income or claims of erroneous deductions shall be paid by the party who earned the omitted income or proffered the claim for an erroneous deduction. The parties agree that nothing contained herein shall be construed as or is intended as a waiver of any rights that a party has under the "Innocent Spouse" provisions of the Internal Revenue Code.

V. Joint Tax Return for 2009

In early 2010 petitioner contacted Mr. Moncada (who remained in Guam at the time) to review the couple's tax records for 2009. Petitioner testified that she informed Mr. Moncada that she had received separate Forms W-2, Wage and Tax Statement, from the DOD, Harding Security, and DNO.[2] She further testified that Mr. Moncada informed her that the tax records she referred to seemed to be complete.

Petitioner took the tax records to H&R Block and had a joint tax return prepared. The return reported combined wages of $78,337 on line 7, pensions and

---

[2]We assume that Ms. Barrera was mistaken when she testified that she had a Form W-2 from the DOD in hand when she talked to Mr. Moncada. It is more likely that she had a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., issued by Defense Finance and Accounting Service (DFAS), reporting Mr. Moncada's retired pay.

annuities of $29,249 on line 12, and total income of $107,586 on line 15.[3]  The

return omitted Mr. Moncada's DOD wages of $64,750 and made no claim for

related withholding tax of $7,952.  Petitioner executed the return on Mr.

Moncada's behalf pursuant to a power of attorney and filed it with the Internal

Revenue Service (IRS).

## VI.  Notice of Deficiency

On March 5, 2012, respondent mailed a joint notice of deficiency for 2009

to petitioner and Mr. Moncada explaining that, because they failed to report Mr.

Moncada's DOD wages, they were liable for an income tax deficiency of $19,489

and an accuracy-related penalty of $2,308 under section 6662(a).[4]  Neither

petitioner nor Mr. Moncada filed a petition for redetermination with the Court

challenging the notice of deficiency.

## VII.  Petitioner's Request for Spousal Relief

On February 1, 2012, petitioner submitted to respondent Form 8857,

Request for Innocent Spouse Relief, for 2009.  Petitioner reported on the Form

8857 that she has taken some college-level courses, she was not the victim of

---

[3]The combined wages of $78,337 comprised petitioner's DOD wages of $54,280 and Mr. Moncada's wages of $19,091 and $4,966 paid by Harding Security and DNO, respectively.

[4]The notice of deficiency was mailed to Mr. Moncada in Guam.

spousal abuse or domestic violence, she did not incur any large expenses during 2009, she did not sign the couple's tax return for 2009 under duress, and she did not have a medical or physical health problem at the time she filed the return or at the time she submitted the request for relief.

Petitioner conceded at trial that she would not suffer economic hardship if required to pay the tax due for 2009. The parties agree that petitioner is current with her tax obligations and has no balance of tax due for any year other than 2009.

VIII. Mr. Moncada's Opposition

On March 6, 2012, Mr. Moncada submitted to the IRS a Form 12508, Questionnaire for Non-Requesting Spouse, stating that he and petitioner should share equal responsibility for the unpaid tax for 2009, citing the portion of the divorce decree quoted above. In April 2012 the IRS informed Mr. Moncada that it had preliminarily determined to grant petitioner relief pursuant to section 6015(c). On May 3, 2012, Mr. Moncada submitted to the IRS a Form 12509, Statement of Disagreement, asserting that petitioner was fully aware that he had earned wages from the DOD during 2009 and that she was obliged to file a complete and accurate tax return.

IX. <u>Final Notice of Determination</u>

As previously mentioned, the IRS issued to petitioner a final notice of determination denying her claim for relief. The notice states that the IRS denied petitioner relief under subsections (b), (c), and (f) of section 6015.

Discussion

Generally, married taxpayers may elect to file a joint Federal income tax return. Sec. 6013(a). After making the election, each spouse is jointly and severally liable for the entire tax due. Sec. 6013(d)(3); <u>Butler v. Commissioner</u>, 114 T.C. 276, 282 (2000). If certain requirements are met, however, an individual may be relieved of joint and several liability under section 6015.

The Court applies a de novo scope and standard of review in deciding whether a taxpayer is entitled to relief under section 6015. <u>See</u> <u>Wilson v. Commissioner</u>, 705 F.3d 980, 993-994 (9th Cir. 2013), <u>aff'g</u> T.C. Memo. 2010-134; <u>Porter v. Commissioner</u>, 132 T.C. 203, 210 (2009). Except as otherwise provided in section 6015, the taxpayer bears the burden of proving entitlement to relief. Rule 142(a); <u>Porter v. Commissioner</u>, 132 T.C. at 210; <u>Alt v. Commissioner</u>, 119 T.C. 306, 311 (2002), <u>aff'd</u>, 101 Fed. Appx. 34 (6th Cir. 2004).

Three forms of relief are available under section 6015. In general, section 6015(b) provides full or apportioned relief from joint and several liability for understatements of tax on a return, section 6015(c) provides apportioned relief in respect of a deficiency to taxpayers who are divorced or separated, and in certain circumstances section 6015(f) provides equitable relief from joint and several liability if relief is not available under subsection (b) or (c).

I. Section 6015(b)

To be eligible for relief under section 6015(b), the requesting spouse must establish, inter alia, that the understatement of tax is attributable to erroneous items of the nonrequesting spouse and, in signing the return, the requesting spouse "did not know, and had no reason to know" of the understatement of tax. Sec. 6015(b)(1)(B) and (C). If a spouse seeking relief under section 6015(b) has actual knowledge of the underlying transaction that produced income that was omitted from a joint return, innocent spouse relief is denied. See Cheshire v. Commissioner, 115 T.C. 183, 192-193 (2000), aff'd, 282 F.3d 326, 332-334 (5th Cir. 2002).

The rules pertaining to a requesting spouse's actual knowledge are set forth in section 1.6015-3(c)(2), Income Tax Regs. See sec. 1.6015-2(c), Income Tax Regs.; see also Cheshire v. Commissioner, 115 T.C. at 195 (stating that the

knowledge standard for purpose of section 6015(c)(3)(C) is an actual and clear awareness of the existence of the item giving rise to the deficiency). In the case of omitted income, knowledge of the item includes knowledge of receipt of the income. Sec. 1.6015-3(c)(2)(i)(A), Income Tax Regs.

The understatement of tax in this case is attributable to the omission of Mr. Moncada's DOD wages. Petitioner withdrew funds from the USAA account ending in 9933, and she admitted to having direct access to monthly account statements for that account. It also appears that petitioner's brother had access to funds in the account. The monthly account statements clearly listed electronic deposits made by Mr. Moncada's employers, including the DOD. Even a cursory review of those bank statements would have revealed that Mr. Moncada received the DOD wages that were omitted from the couple's joint return.

Petitioner's testimony that she spoke to Mr. Moncada by telephone and confirmed that she had a complete set of his Forms W-2 is unconvincing. It appears that petitioner did not discuss the records with Mr. Moncada in any great detail and that she erroneously referred to the Form 1099-R issued by DFAS as a Form W-2. Assuming the conversation occurred as petitioner testified, we consider it inadequate given that she possessed the monthly bank account

statements that provided confirmation of the amount of Mr. Moncada's total wages.

Considering all the circumstances, we conclude that petitioner had actual knowledge of the omitted income and the related understatement of income tax on the couple's joint return within the meaning of section 6015(b)(1)(C). Consequently, we hold that petitioner does not qualify for relief from joint and several liability under section 6015(b).[5]

## II. Section 6015(c)

Under section 6015(c), a divorced or separated spouse may elect to limit liability for a deficiency on a joint return to the portion allocable to him or her. A taxpayer can make a valid election only if: (1) the taxpayer is no longer married to, is not part of the same household of, or is legally separated from his or her spouse; (2) the taxpayer makes a timely election; and (3) the Secretary does not demonstrate that the taxpayer had actual knowledge at the time the taxpayer signed the return of an item giving rise to a deficiency. Sec. 6015(c)(3)(A), (B), and (C).

---

[5]Given that petitioner had actual knowledge of the full amount of omitted income, she likewise is not eligible for apportioned relief under sec. 6015(b)(2).

As discussed above, we conclude that petitioner had actual knowledge of the omitted income. It follows that petitioner is not entitled to relief pursuant to section 6015(c).

## III. Section 6015(f)

Section 6015(f) grants the Commissioner discretion to relieve an individual from joint liability, where relief is not available under section 6015(b) or (c), if, taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or deficiency. The Commissioner recently prescribed revised guidelines in Rev. Proc. 2013-34, 2013-43 I.RB. 397, modifying and superseding Rev. Proc. 2003-61, 2003-2 C.B. 296, that are considered in determining whether it is inequitable to hold a requesting spouse liable for all or part of the liability for any unpaid tax or deficiency.[6] Although the Court consults these guidelines when reviewing the Commissioner's denial of relief, see Washington v. Commissioner, 120 T.C. 137, 147-152 (2003), we are not bound by them inasmuch as our analysis and determination ultimately turn on an evaluation of all the facts and circumstances, see Pullins v. Commissioner, 136

---

[6]Rev. Proc. 2013-34, sec. 7, 2013-43 I.R.B. 397, 403, provides that the guidelines are effective for requests for relief filed on or after September 16, 2013, and requests for equitable relief pending on September 16, 2013, whether before the IRS, the Office of Appeals, or a Federal court.

T.C. 432, 438-439 (2011); Porter v. Commissioner, 132 T.C. at 210; Hudgins v. Commissioner, T.C. Memo. 2012-260, at *39-*40.

A. Threshold Conditions

Rev. Proc. 2013-34, sec. 4.01, 2013-43 I.R.B. at 399, sets forth seven threshold conditions that must generally be satisfied before the Commissioner will consider a request for equitable relief under section 6015(f). There is no dispute that petitioner satisfies each of the seven threshold conditions.

B. Streamlined Determinations Granting Relief

Rev. Proc. 2013-34, sec. 4.02, 2013-43 I.R.B. at 400, sets forth elements that a requesting spouse must satisfy to qualify for a streamlined determination granting relief under section 6015(f).[7] As is relevant here, petitioner does not qualify for streamlined relief because (as discussed above) she had actual

---

[7]Rev. Proc. 2013-34, sec. 4.02, 2013-43 I.R.B. at 400, permits relief if all the following elements are satisfied: (1) on the date the IRS makes its determination, the requesting spouse is no longer married to, or is legally separated from, the nonrequesting spouse, is a widow or widower and is not an heir to the nonrequesting spouse's estate that would have sufficient assets to pay the tax liability, or has not been a member of the same household as the nonrequesting spouse at any time during the 12-month period ending on the date the IRS makes its determination; (2) the requesting spouse will suffer economic hardship if relief is not granted; and (3) on the date the joint return was filed, the requesting spouse did not know or have reason to know of the item giving rise to the understatement or deficiency.

knowledge of the understatement of tax, and she admittedly will not suffer economic hardship if relief is not granted.

C. Facts and Circumstances Analysis

Where, as here, a requesting spouse meets the threshold conditions but fails to qualify for streamlined relief, the Commissioner may nevertheless grant relief after considering the following nonexclusive list of factors set forth in Rev. Proc. 2013-34, sec. 4.03: (1) whether the requesting spouse is separated or divorced from the nonrequesting spouse; (2) whether the requesting spouse will suffer economic hardship if relief is not granted; (3) whether on the date the joint return was filed the requesting spouse did not know and had no reason to know of the item giving rise to the understatement or deficiency; (4) whether the requesting or nonrequesting spouse has a legal obligation to pay the tax liability pursuant to a decree of divorce or other agreement; (5) whether the requesting spouse received a significant benefit from the unpaid income tax liability or understatement; and (6) whether the requesting spouse has made a good-faith effort to comply with the Federal income tax laws for the taxable years following the taxable year(s) to which the request for relief relates. Two additional factors that the Commissioner may consider in favor of granting relief are whether: (1) the nonrequesting spouse abused the requesting spouse, and (2) the requesting spouse was in poor mental or

physical health at the time the joint return was filed or when the requesting spouse requested relief. See id. sec. 4.03(2)(c)(iv), (g), 2013-43 I.R.B. at 402, 403.

1. Marital Status

Petitioner and Mr. Moncada were divorced at the time the IRS made its determination in this case. The marital status factor weighs in favor of relief.

2. Economic Hardship

Petitioner admitted that if relief is not granted under section 6015, she will not suffer economic hardship. The economic hardship factor is neutral.

3. Knowledge

As previously discussed, we conclude that petitioner had actual knowledge of the wages that Mr. Moncada earned while working for the DOD during 2009. This factor weighs against relief.

4. Legal Obligation

The decree of divorce governing the termination of petitioner's and Mr. Moncada's marriage provides in relevant part that petitioner and Mr. Moncada

> shall be equally responsible for all federal income tax liabilities of the
> parties from the date of marriage through December 31, 2010, and
> each party shall timely pay 50 percent of any deficiencies,
> assessments, penalties, or interest due thereon and shall indemnify
> and hold the other party and his or her property harmless from 50
> percent of such liabilities unless such additional tax, penalty, and/or
> interest resulted from a party's omission of taxable income or claim

of erroneous deductions. In such case, the portion of tax, penalty, and/or interest relating to the omitted income or claims of erroneous deductions shall be paid by the party who earned the omitted income or proffered the claim for an erroneous deduction.

Although the understatement of tax was attributable to the failure to report a portion of Mr. Moncada's wages, we cannot lay the blame for the omitted income solely on him. Recall that petitioner was acting as Mr. Moncada's attorney-in-fact in respect of the joint return. Under the circumstances, she was obliged to ensure that the return was complete and accurate, and we are not convinced on this record that she took all the steps reasonably necessary to confirm that the return was correct as filed. Because we conclude that petitioner shared responsibility for the omission of income in question, we consider the legal obligation factor to be neutral.

## 5. Significant Benefit

Petitioner admitted that she used some of the funds in the USAA account. We note that the amount of the understatement is relatively small and the record otherwise is unclear as to whether petitioner spent lavishly, made any large purchases, or received any benefit in excess of normal support from the unpaid tax liability. In the absence of additional evidence, we conclude that this factor is neutral.

6. Compliance With Income Tax Laws

The parties agree that petitioner has filed all required tax returns and is otherwise in compliance with Federal income tax laws for the taxable years after 2009. This factor weighs in favor of relief.

7. Mental/Physical Health

Petitioner was not in poor mental or physical health at the time the joint return was filed or when she submitted her request for spousal relief. This factor is neutral.

8. Abuse

Petitioner was not abused by Mr. Moncada, and there is no evidence that he attempted to rigidly control household finances or deny her access to financial records. This factor is neutral.

IV. Conclusion

Weighing all the facts and circumstances, we are not persuaded that it would be inequitable to deny petitioner spousal relief under section 6015(f). As the preceding discussion shows, there are factors that weigh in favor of and against relief and several factors that are neutral. Our decision whether relief is appropriate, however, is not based on a simple tally of those factors. See, e.g, Hudgins v. Commissioner, at *39-*40. Rather, our decision is heavily influenced

by the somewhat unique circumstance that petitioner was acting as Mr. Moncada's attorney-in-fact in respect of their joint return and she had possession of the bank records that documented nearly all of the wages that he received during 2009. Considering that petitioner will not suffer economic hardship and bearing in mind that the terms of the divorce decree support the proposition that petitioner and Mr. Moncada should pay equal shares of the tax deficiency, we conclude that it would not be inequitable to deny petitioner spousal relief pursuant to section 6015(f).

To reflect the foregoing,

Decision will be entered

for respondent.